## SOUTHERN ANTHRACITE COAL COMPANY *v.* BOWEN.

### Opinion delivered December 13, 1909.

1. ACTIONS—CONSOLIDATION.—Where the pleadings and evidence in two actions for personal injuries were the same, it was not error to consolidate them. (Page 144.)

2. WITNESSES—EXCLUSION FROM COURT ROOM.—Under Kirby's Digest, § 3142, providing that "if either party require it the judge may exclude from the court room any witness of the adverse party," it is within the discretion of the court to exclude witnesses from the court room. (Page 144.)

3. TRIAL—ARGUMENT OF COUNSEL.—The making of an improper remark by appellee's counsel in his opening statement to the jury was cured by an instruction to the jury not to consider such remark where it was not of such prejudicial nature that its effect could not be removed in that way. (Page 144.)

4. INSTRUCTIONS—CONSTRUCTION AS A WHOLE.—The court's charge to the jury must be read as a whole, and all of its parts considered in determining its meaning; and when reference is made in one instruction to some other part of the charge, or when words are used in some instructions that are correctly defined in others, the other parts of the charge referred to and the other instructions must be considered in determining whether or not the particular instructions under consideration are correct. (Page 149.)

5. SAME—WHEN MISLEADING.—Where two separate causes of action in favor of two plaintiffs against the same defendant were consolidated, and there was evidence tending to establish a defense to the cause of action of one plaintiff, but not to that of the other, an instruction which ignored this defense in the one case was misleading. (Page 150.)

6. SAME—CONSTRUCTION AS A WHOLE.—Where the instructions in a case, when construed as a whole, are so conflicting as to mislead the jury and not give them a certain guide to follow in making their verdict, the error of giving them is prejudicial. (Page 151.)

7. MASTER AND SERVANT—ASSUMED RISK.—Where a servant is required by the master to make his place of work safe, and fails to do so, and is injured, he assumed the risk of his failure to discharge such duty. (Page 152.)

8. INSTRUCTIONS—WAIVER OF OBJECTIONS—Where appellant moved that the court modify an instruction in a certain particular only, other objections to the instruction will be deemed waived. (Page 152.)

Appeal from Pope Circuit Court; *J. H. Basham,* Judge; reversed.

### STATEMENT BY THE COURT.

Appellees were carpenters, and in the employ of appellant in and about its coal mine. The mine was operated by a shaft, separated into two divisions by wooden partition. Two cages were used to hoist the coal and to let down and hoist men and material. To these cages wire ropes were attached, and the ropes passed over a drum, and the cages were propelled up and down by an engine. They were so arranged that one went up while the other went down. On October 15, 1907, as the cage on the north division of the shaft was coming up with a car of coal, it toppled over within about twenty feet of the top, and the coal falling back down the shaft displaced the timbers below and caused the descending car in the south division to stick in the shaft about forty feet from the bottom. Appellees went down to unfasten this cage, and while they were on the cage same fell with them to the bottom, and they were seriously injured. They

each filed separate complaints against appellant, in which they allege, among other things, the following: "That the general manager then in charge of said mine carelessly and negligently, and without proper and reasonable care for the safety of plaintiff, caused said wire rope attached to said hung cage to be fastened and held in an insufficient and dangerous way; that is to say, only by means of clamping wire rope at the top of said shaft by fastening and bolting together timbers with said rope between. The said wire rope was one inch in diameter, and worn very slick and smooth, and was also oily. And the said timbers· used as clamps were oak and pine with a small iron clamp above. This plaintiff objected to the manner in which the wire rope was being fastened or clamped, and suggested to said general manager that it should be tied to a large timber 12 x 13, which was bolted and fastened to other timbers, being a part of the foundation of the engine, which manner of fastening said rope was practicable and feasible. But this suggestion by plaintiff was not adopted by the general manager in charge of said mine, but the other manner or mode of fastening said rope by means of clamping it as above explained was ordered · by said general manager, stating that it was sufficient and would be safe. Whereupon said general manager ordered and directed plaintiff to go down to the hung cage then fastened and replace and adjust all timbers and to loosen and unfasten said cage. In obedience to said order plaintiff and his co-employees (naming them) went down to said cage thus hung, and, in order to adjust the timber and said cage, it became necessary for plaintiff and co-employees to get on to said cage that was fastened. And, after getting upon said cage and loosening it and readjusting the timbers which were holding it, said cage became loose, and all obstructions removed, and on account of the careless and insufficient manner in which said wire rope had been clamped or fastened, and without fault upon the part of plaintiff, the weight of the said cage, together with the weight of said two men, jerked the rope through between said two timbers, and fell with great force and velocity to the bottom of said shaft, from which fall plaintiff was seriously and permanently injured.

There was the further allegation in one of the complaints that the defendant was negligent in failing to furnish said cage

with, and attach thereto, sufficient spring catches to prevent the consequence of cable breaking or the loosening or disconnecting of the machinery attached to said cage.

The injuries received by the respective complainants were described in their complaints. Appellee Bowen laid his damages at $5,000, and appellee Thrasher laid his damages at $20,000.

The appellant answered the respective complaints, denying all the material allegations and setting up the defenses of injury by fellow servants, contributory negligence and assumed risk. The causes were consolidated over appellant's objection, and the jury returned a verdict in favor of appellee Thrasher for $5,000 and in favor of appellee Bowen for .$500. Judgment was entered in favor of each appellee for the amount of the verdict obtained by him, and this appeal has been duly prosecuted. Other facts stated in the opinion.

*Read & McDonough,* for appellants.

Before cases can be consolidated they must relate to the same question. 83 Ark. 288; 145 U. S. 285. If consolidation prejudices the rights of any of the parties, it should not be ordered. 84 N. Y. S. 503; 74 Ark. 54; 57 Atl. 257. If the issues are different, there can be no consolidation. 19 Wend. 23; 142 Mass. 220; 55 Fed. 769; 21 S. W. 757; 124 Mo. App. 600. The master is not an insurer of the safety of his employees. 44 Ark. 524; 76 Ark. 436; 71 Ark. 518; 88 Ark. 295. While a master cannot relieve himself from liability by delegating his authority, yet he can relieve himself from liability to the servant to whom the authority is delegated. 44 Ark. 524; 88 Ark. 292; 58 Ark. 217; 76 Ark. 69. The proof does not show any failure of duty on defendant's part. 76 Ark. 69.

*U. L. Meade* and *Davis & Pace,* for appellees.

These cases were properly consolidated. 86 Ark. 130; 83 Ark. 290. Matters of practice within the discretion of the trial court will not be reviewed by the Supreme Court unless that discretion has been abused. 10 Ark. 428; 5 Ark. 208. Consolidating cases, under the act of 1905, p. 798, is left to the discretion of the trial court. 145 U. S. 285. There was no error in refusing to enforce the rule against the witnesses. 56 Ark. 404; 77 Ark. 603. Erroneous statements of counsel are cured

by the court's directing the jury to disregard it. 58 Ark. 353; 74 Ark. 256; 75 Ark. 347. If the instructions given present every phase of the law applicable to the case, they are sufficient. 88 Ark. 524; 83 Ark. 61; 77 Ark. 458; 69 Ark. 558; 67 Ark. 531; 75 Ark. 325; 74 Ark. 377.

WOOD, J. (after stating the facts). First. The causes were of "a like nature" and "relative to the same question." The cause of action alleged in each case grew out of the same state of facts. The defenses alleged in each were the same, although the evidence in support of the defenses of contributory negligence and assumed risk in the Thrasher case was different from that in the Bowen case. The injury to each was caused at the same time and by the same agency, proceeding from the same source. The appellees had to rely upon the same evidence to support their alleged causes of action. The issues raised by the pleadings were precisely the same, and the court, after the evidence was in, by correct instructions might have prevented any confusion in the application of the doctrine of contributory negligence and assumed risk as applicable to the respective plaintiffs. The causes here were certainly as appropriate for consolidation as any of the following where it was approved: *St. Louis, I. M. & S. Ry. Co.* v. *Broomfield,* 83 Ark. 290; *American Insurance Co.* v. *Haynie,* 91 Ark. 43. See also *Mahoney* v. *Roberts,* 86 Ark. 130.

Second. Under the statute providing that "if either party require it the judge may exclude from the court room any witness of the adverse party" (Kirby's Dig., § 3142), it is within the discretion of the court to exclude witnesses from the court room. Where the court overrules a motion to exclude, there is no error unless it appears that some prejudice resulted. No prejudice is shown here. *St. Louis, I. M. & S. Ry. Co.* v. *Pate,* 90 Ark. 135.

Third. Counsel for appellees in the opening statement to the jury said: "The owners are not the ones that are liable." This was only tantamount to a declaration that appellant expected to prove that it was not the one who was liable for any injuries sustained by appellees. The remarks were not prejudicial in themselves. The ruling of the court withdrawing them and instructing the jury not to consider them,

removed any possible prejudicial inference that the jury might otherwise have drawn from them. *Little Rock & Fort Smith Ry. Co.* v. *Caveness,* 48 Ark. 106; *Kansas City S. Ry. Co.* v. *Murphy,* 74 Ark. 256; *Carpenter* v. *Hammer,* 75 Ark. 347. The remarks were not of such prejudicial nature that the effect could not be removed by instructions of the court to disregard the remarks.

Fourth. The testimony on behalf of appellees tended to show that the wire rope attached to the cage that was fastened in the shaft was clamped between two pieces of oak timber, held together by bolts. The rope was fastened in this way at the top of the shaft. The purpose in so securing it was to prevent the cage from falling after the men had gone down and unfastened it. The rope was clamped in this manner under the directions of the manager and general superintendent. Both were present. Thrasher suggested a method of fastening the rope which he regarded as more secure, but the manager did not adopt his suggestions, but proceeded to have the rope fastened in the manner indicated. While the rope was being fastened, appellees were called away, and when they were called back and were directed by the manager to go down to unfasten the cage, they made no further examination of the manner by which the rope was fastened at the top. Thrasher and Bowen obeyed the orders of the general manager and superintendent to go down and unfasten the cage. They went down without inspecting the manner in which the rope wast fastened "because the mine owner directed it. He was a practical man and a miner, and the other man (the superintendent) had been around shafts all his life," and appellees went down in the shaft because they "supposed it was safe." When they got down to the cage, it appeared to them to be necessary to get on the cage that was fastened in order to get same loose. They therefore got on the cage and unfastened it. When it was set free, it immediately dropped to the bottom of the shaft. The wire rope was oily and slick, and the clamps did not grip it tight enough to hold it, so as to prevent its slipping through and letting the cage fall. There was testimony tending to show that the cages were originally provided with "catches," which were designed to stop the cage and hold it in place, should the cable give way. These "catches"

were forced into the timber when the cage dropped by means
of a spring. - One leaf of the spring had been removed prior to
the accident, and this had a tendency to weaken the spring. The
catches would not work on the day of the accident. The catches
or stays would not work except when the weight of the cage
tightened the rope, but when the cage fell the rope slipped
through and never became taut at all. Thrasher suggested to
the manager that the wire rope should be fastened by clamping
it to the top timbers. It should have been fastened to a 12 x 12.
A kink could then have been placed in the wire rope which would
have made it secure.

The testimony on behalf of appellant tended to prove that
it was a part of Thrasher's duty to fasten the rope, that he was
the head carpenter, having supervision of the carpenter work
in general, and that Bowen was working under him. It was his
duty, if a cage was caught in a shaft, to release it and to take
what help he needed. Thrasher was directing the work. There
was no other one to do the work except Thrasher. Thrasher
was the judge as to whether a rope was safe when clamped in
the manner it was done that day. "If the clamping had been
done sufficiently tight, it would have held the cage." Thrasher
had charge of the men that were fixing the rope that day, and
had fixed it that way before, and never objected to fixing it that
way on the day of the accident, and did not suggest any other
way to fix it. The above is, in substance, what the evidence
tended to prove in support of the respective contentions.

We are of the opinion from the evidence in the whole record
that it was a jury question as to whether the appellees sustained
injuries through the negligence of appellant. It was also a
question for the jury as to whether appellee Thrasher had as-
sumed the risk, or whether he was guilty of contributory neg-
ligence. The uncontroverted evidence showed that Bowen did not
assume the risk, and was not guilty of contributory negligence.
The rulings of the court on the prayers for instructions offered
by appellant were correct. The prayers granted covered such
of the rejected prayers as were correct. The appellant com-
plains of the ruling of the court in giving, among others, the fol-
lowing instructions:

"1.  I charge you that it is the duty of the master to fur-

nish a servant a reasonably safe place in which to work, and in this case if you find that the plaintiffs, W. B. Thrasher and W. R. Bowen, were on October 15, 1907, in the employ of the defendant, the Southern Anthracite .Coal Company, and while so engaged were ordered by the defendant to go down in the shaft of the mine of the defendant to unfasten or unloosen the cage that was hung on the south side of said shaft, and the plaintiffs in obedience to said order went down into said shaft, and, while at work upon said cage, the same fell with them and injured them, without fault on their part, and that said injury was occasioned because the defendant had negligently. failed to securely fasten said cage by means of the wire cable attached to it, or by other good and sufficient means, you will find for the plaintiffs, and assess their damages at such a sum as you believe, under the law and evidence, will compensate them for the injuries they received.

"2. I charge you that it is the 'duty of a servant to obey all reasonable orders given him by the master.

"3. The court instructs the jury that, before the defendant can ask the jury to consider the defense of contributory negligence, it must show that the plaintiffs, or either of them, were guilty of negligence that directly contributed to the injury, and that without such negligence on their part the injury would not have occurred; and the law requires this to be proved by a preponderance of the evidence in this cause, and, unless so proved, you are instructed not to consider it.

"4. The court instructs the jury that contributory negligence means negligence that contributed to the injury, and it consists in doing something that a reasonably prudent person would not do, or in failing to do something that a reasonably prudent person would do; and in this case if you find that the plaintiffs, or either of them, did anything at the time they were injured or failed to do something that they should have done, that would [not] have been done by a reasonable prudent person, situated as they were, and that their actions as above set forth brought about the injury or contributed to it, they would be guilty of contributory negligence.

"4½. The court instructs the jury that if you find the injury was the direct result of the negligent failure of defendant

to securely fasten the wire cable that held the cage, and that plaintiffs were not guilty of contributory negligence as defined in these instructions, you will find for the plaintiff.

"5. The court instructs the jury that if you find that either of the plaintiffs were guilty of contributory negligence, such as will defeat his cause of action, and the other not, you may return a verdict in favor of the one that was not guilty of negligence.

"6. It is only when the danger or risk of injury from obedience to the commands of the master is so apparent to the servant as to render it under the circumstances unreasonable and imprudent for him to obey the master's orders, and he then voluntarily obeys and is injured, that he is guilty of contributory negligence.

"7. In obeying the commands of the master, the servant does not assume any risk occasioned by the negligence of the master, unless he has knowledge of such negligence and the danger incident thereto, and he with such knowledge accepts the risk and takes his chances, then in that event he cannot recover.

"8. I charge you that the duty resting on the master to provide a reasonably safe place for his servant to work is a duty that he cannot delegate to another, and the master cannot escape liability by leaving to another the discharge of that duty, if there is failure to provide a reasonably safe place for his servant to work."

The defendant moved the court to modify said instruction No. 8 as follows:

"But if the defendant delegated the duty to Thrasher and Bowen, or either of them, to make the place safe, then it was their duty or the duty of the one upon whom was imposed that obligation so to do."

"9. You are further instructed that one of the charges of negligence in plaintiffs' complaint is that defendant failed to furnish the cage with, and attached thereto, sufficient spring catches to prevent the consequence of the cable breaking; and if you believe that defendant was negligent in not furnishing said catches sufficient for the purpose, and that such negligence was the cause of the injury, without fault on the part of the plaintiff, you will be authorized to find for the plaintiff."

Appellant contends specifically that prayer number one was erroneous because the same made it the positive duty of the master to furnish a safe place to work, and in effect made the master the insurer of the servant's safety, and further because said instruction confused the right of recovery of both plaintiffs, and submitted the question to the jury upon the theory that each plaintiff might recover upon the same testimony.

When the first part of instruction number one that defines the master's duty as to providing a safe place for the servant is read in connection with the part that tells the jury that the defendant is not liable unless it *"had negligently failed to securely fasten said cage by means of the wire cable* attached to it," etc., the instruction can not fairly be construed as making it the absolute duty of appellant to provide appellees a safe place. While the instruction tells the jury that it is the duty of the master to provide a reasonably safe place for the servant, it also tells them that, before the master can be held liable for his failure to perform that duty, it must be established that his failure was *negligent.* Then, when we look to the fourth and eleventh instructions given at the instance of appellant, we see that the court has correctly told the jury that the defendant was negligent if, under the evidence, it failed to exercise ordinary care. Instructions four and eleven are as follows:

"4. The defendant is not an insurer of the tools and instrumentalities furnished the plaintiffs. The law requires that the defendant use ordinary care to provide its employees with reasonably safe appliances; and if the defendant used such care in fastening the rope as a person of ordinary prudence would use, considering the danger, plaintiffs cannot recover."

"11. If the usual and ordinary way of securing said rope was to clamp same as described in the evidence, or if it was secured at this time better than was ordinarily done, and if the person whose duty it was to fix said rope used ordinary care in fixing same, then there can be no recovery, and the jury will find for the defendant."

Each instruction must be read as a whole, and all of its parts must be considered in determining its meaning; and when reference is made in one instruction to some other part of the charge, or when words are used in some instructions that are

correctly defined in others, the other parts .of the charge referred to and the other instructions must be considered in determining whether or not the particular instructions under consideration are correct. The rule is well stated in *St. Louis S. W. Ry. Co.* v. *Graham,* 83 Ark. 61, as follows: "It is generally impossible to state all the law of a case in one instruction. If the various instructions given in a case separately present every phase of the law, as a harmonious whole, there is no error in a particular instruction failing to carry qualifications which are explained in others." And counsel cite some of our later cases that support the rule: *Louisiana & Arkansas Ry. Co.* v. *Ratcliffe,* 88 Ark. 524; *St. Louis, I. M. & S. Ry. Co.* v. *Day,* 86 Ark. 104; *Southern Cotton Oil Co.* v. *Spotts,* 77 Ark. 458; *Blair* v. *State,* 69 Ark. 558; *St. Louis, I. M. & S. Ry. Co.* v. *Baker,* 67 Ark. 531; *Brinkley Car Works & Mfg. Co.* v. *Cooper,* 75 Ark. 325; *Arkadelphia Lumber Co.* v. *Posey,* 74 Ark. 377.

Instruction number one, when considered as a whole, and in connection with the other instructions mentioned *supra,* is not open to the particular objection now under consideration.

The instruction, however, fails to recognize the difference, developed by the evidence, in the relations of Thrasher and Bowen to appellant. The evidence on behalf of appellant tends to show that Thrasher was a vice-principal in the matter of making the place safe for the descent of himself and co-employees into the mine. According to appellant's evidence, that was his duty. The undisputed evidence shows that Bowen had no such duty to perform. He was not the foreman of the carpenter work, but worked under Thrasher. Under the evidence, therefore, the jury might have found that Thrasher was not entitled to recover because it was his duty to make the wire rope secure, and that he assumed the risk of not doing so, or was guilty of contributory negligence if he failed to do so, and made unsafe descent when he knew, or by the exercise of ordinary care should have known, that the wire rope was insecurely fastened. But this evidence that might have defeated him, if believed by the jury, would entitle Bowen to recover, unless he knew, or should have known, of Thrasher's negligence, if he was negligent. The instruction ignored the evidence showing the difference in the relation of the respective plaintiffs to appellant. The effect of the

instruction was to tell the jury that if appellant had no defense to Bowen's claim under the evidence, neither did it have to Thrasher's. It practically told the jury that their rights, under the evidence, were the same. This was confusing, misleading, and prejudicial to appellant as to the claim of Thrasher. For appellant under the evidence may have had a complete defense to Thrasher's claim, and yet have been liable to Bowen.

Instructions 3, 4 and 4½, when considered in connection with each other, tell the jury in effect that the contributory negligence of either one, or both, of the appellees, if established by a preponderance of the evidence in the case, would defeat recovery. Under these instructions the contributory negligence of one of the appellees would defeat recovery by the other, although that other might himself be free from contributory negligence. But, when these are read in connection with number 5, it is clear that the court meant to tell the jury that if both defendants were guilty of contributory negligence they could not recover, and that, if one was guilty of contributory negligence and the other not, the finding might be for the one that was free from such negligence. The instructions, as thus framed, might have been prejudicial to appellees, but not to appellant. The instructions recognize that there may be a finding of contributory negligence on the part of one of the appellees, and not on the part of the other, thus leaving room for the jury to consider the evidence tending to show the difference in the relation that the appellees sustained to the appellant. But in this respect they were in conflict with instruction number 1.

While it was not prejudicial error to give these instructions in the form presented, they do not cure the error of the court in giving instruction number one. The rule we have announced *supra* requires that the instructions, when taken together, should not be so conflicting as to confuse or mislead the jury, not giving them a certain guide to follow in making their verdict. When presented from the conflicting viewpoints of the respective parties litigant, the above instructions are well calculated to mislead the jury. The error is in giving instruction number one and others that, while not prejudicial to appellant, are in direct conflict with it. The instructions can not be reconciled, and instruction number one should not have been given. *St. Louis, I. M. & S. Ry Co.*

v. *Beecher*, 65 Ark. 64; *St. Louis, I. M. & S. Ry. Co.* v. *Luther Hitt*, 76 Ark. 224; *Grayson-McLeod Lumber Co.* v. *Carter*, 76 Ark. 69; *Miller* v. *Nuckolls*, 77 Ark. 64. Instructions numbered 2, 6 and 7 announce correct general principles, without applying them to the particular phases of the evidence. This practice is not to be commended. But we find no prejudicial error in this under the evidence in this case. For these instructions were doubtless based upon the evidence tending to show that Thrasher and Bowen were directed by the master to go down in the shaft and unfasten the cage.

Instruction number eight was erroneous and prejudicial to appellant, so far as Thrasher is concerned, because it ignored the evidence tending to prove that it was the duty of Thrasher to fasten the wire rope. If appellant deputed to Thrasher the duty of making the wire rope secure, and he neglected to perform this duty, he assumed the risk of injury from his negligence in failing to discharge the duty imposed on him, and the master is not liable to him for the injury resulting. *St. Louis, I. M. & S. Ry. Co.* v. *Harper*, 44 Ark. 524. If Thrasher was appointed to make the wire rope secure, he assumed the risk of not doing so in a prudent and skilful manner. *Murch Bros. Const. Co.* v. *Hays*, 88 Ark. 292. See also *Railway Co.* v. *Torrey*, 58 Ark. 217.

The instruction was also in conflict with instructions number four and eleven given at the request of appellant, in that it told the jury without qualification that it was the duty of the master to provide a reasonably safe place, etc., for his servants to work. Appellant waived any error in this respect, however, by asking for a modification which did not include this. As to Bowen, there was no evidence to show that it was his duty to fasten the wire rope. The instruction was not misleading as to him.

There being no prejudicial error in the record as to Bowen's claim, the judgment in his case is affirmed. As to Thrasher, the judgment is reversed, and the cause remanded for new trial for error in instructions mentioned.