BYRD *v.* PINE BLUFF CORPORATION.

Opinion delivered March 18, 1912.

1. MASTER AND SERVANT—LIABILITY OF MASTER.—An electric light company is not responsible to its employees for the defective condition of wires on the inside of a private building which it has not installed nor undertaken to keep in repair. (Page 633.)

2. SAME—NEGLIGENCE.—Where a servant of an electric light company was killed while employed to remove certain wires from a building and had been duly cautioned not to allow such wires to come in contact with any live wires therein, the master will not be responsible upon the ground of its failure to furnish him a safe place in which to work. (Page 634.)

Appeal from Jefferson Circuit Court; *Antonio B. Grace,* Judge; affirmed.

*Caldwell & Brockman* and *Crawford & Hooker,* for appellant.

1. The only question is whether there was sufficient evidence to warrant the submission of the case to the jury on the question of negligence. 63 Ark. 94; 77 *Id.* 556; 70 *Id.* 74; 71 *Id.* 305; 73 *Id.* 561; 71 *Id.* 446; 91 *Id.* 337; 87 *Id.* 498.

2. Many cases hold it to be the duty of an electric company, before sending its current through an apparatus installed in a building by other parties, to make reasonable inspection to see whether it is fit for use. 71 N. J. L. 430; 58 Atl. 1082; 31 Cal. 301; 73 Pac. 39; 59 S. E. 626; 29 Ky. L. Rep. 38; 6 L. R. A. (N. S.) 459; 91 S. W. 703; 111 App. Div. 353; 98 N. Y. Supp. 124; 26 R. I. 427; 59 Atl. 112; 81 Ill. App. 322; 190 Ill. 367; 60 N. E. 357; 40 La. Ann. 467; 209 Pa. 571; 18 Col. App. 131; 70 Pac. 447; 9 Kan. App. 301; 98 N. Y. Supp. 781. In all these cases and many others the person injured were licensees, but the companies were held to the highest degree of care commensurate with the danger involved. 122 N. W. 199; 24 L. R. A. (N. S.) 451.

3. There is a line of decisions that where the inside wiring is done by an independent contract with the owner of the build-

ing, and only accepted by him, the company owes no duty, further than not to wantonly or knowingly injure a licensee; but this does not apply where the company sends its employee to work on wires to which it furnishes the electricity.    2 Bailey, Pers. Inj. to Master & Serv., § § 2561, 2571, 2895; 137 Pa. 148; 45 L. R. A. 267; 16 *Id.* 43; 190 Mo. 621; 89 S. W. 865.

4.    There was evidence of negligence, and it was error to direct a verdict for defendant.    161 Mass. 583; 28 L. R.A. 596; 122 N. W. 499; 46 L. R. A. 745; 164 Mass.; 32 L. R. A. 400; Black, Proof & Pl. in Acc. Cases, § 110 *et seq.*; 59 Ark. 215; 40 La. Ann. 467; 94 Ark. 566; 135 S. W. 925.

*Bridges & Wooldridge,* for appellee.

1.    Defendant was negligent and assumed the risk.    96 Ark. 500.

2.    Where an individual who owns property does his own wiring, or has it done, and the electric company only supplies the current by connection with the wiring already done, responsibility ends when the connection is properly made.    63 Pac. 949, 951; 16 L. R. A. 43.

McCulloch, C. J.    The Pine Bluff Corporation (a private corporation) is engaged in the business of furnishing water, gas and electricity to the people of the city of Pine Bluff, and John Byrd was employed as a workman in the gas and water department.    He was killed by an electric shock on account of a wire, of which he had hold and which he was removing from a building, coming in contact with an uninsulated electric light wire, and this is an action against the company to recover damages on account of his death.    The trial court instructed a verdict in favor of the defendant, and this appeal raises solely the question whether or not the evidence was sufficient to warrant the submission of the case to the jury.

Byrd was sent by his employer to remove from a store building, then occupied by Stern & Levy, the old gas fixtures and apparatus, the use of which had been discontinued by the occupants.    He had with him a helper, who was working under him, and they both were advised of the danger of allowing the wire to come in contact with an electric light wire.    After taking down the fixtures inside of the building, it became necessary to remove the small copper wire tubing through which

the gas had been supplied. This wire ran along the ceiling of the building between two electric light wires, and came out of the building at the top of a window, and thence to the ground through a three-quarter inch iron pipe. After cutting loose his wire on the inside, Byrd was standing on a box on the outside of the window, drawing the wire through a hole in the window casing, when the end of the wire on the inside of the building fell across an uninsulated electric light wire, and the shock resulted. Byrd cried out in his pain, and his companion came to him and removed the wire, but too late to save his life. The uninsulated part of the electric wire, with which the gas wire came in contact, covered a space of about two inches, and was about a foot from the meter, which was up on the inside of the wall near the top of the window through which the gas wire came, the uninsulated space being between the meter and the ceiling.

It does not appear from the testimony who put in the electric wiring in the building, and there is no evidence that the defendant corporation had anything to do with it. Mr. Levy, the only witness who testified on that subject, stated that the house was wired for electricity before they moved into the building about three years before the accident, and that the electricity had been supplied by another company in Pine Bluff engaged in that business, but the service had been discontinued after the installation of the gas in the building. Later they decided to use electric lights instead of gas, and employed the defendant to furnish electricity and remove the gas fixtures. Some time before this—the exact time is not disclosed—the defendant attached its wires to the wires on the outside of the building and proceeded to furnish electric current. There is no evidence that defendant had anything to do with the installation or maintenance of the wires and appliances on the inside of the building.

The burden was upon the plaintiff to show by competent testimony that the death of Byrd was caused by some negligent act of his employer, the Pine Bluff Corporation. This we think plaintiff has entirely failed to do. The defendant was not responsible for the defective condition of the wires on the inside of the building. It had the right by contract with the owner to furnish the current of electricity and to allow the

owner to assume the responsibility for the condition of the appliances in the building. It was not bound to maintain a system of inspection to see that the wires were kept properly insulated. 1 Joyce on Electric Law, § 445-C; *National Fire Ins. Co.* v. *Denver Consolidated Electric Co.*, 16 Col. App. 86; 63 Pac. 949.

We are aware that there are authorities which tend to sustain the contrary view, but we believe it to be unjust, as well as unsound upon principle, to say that a lighting company is compelled to maintain in good repair appliances on the inside of a private building which the owner has a right to install for himself or by some one else of his own selection, and who does, in fact, install and maintain the same.

An obligation on the part of the lighting company to inspect and maintain the wires and other appliances on the inside of the building necessarily excludes the right of the owner to assume that responsibility himself. Of course, it would be different where the company was employed to put in the appliances, and maintain them, for then there would be a continuing duty to exercise proper care to see that they were kept in safe condition. We think it is sound to hold that the owner has the right to have his own building wired, and to contract with the lighting company merely to furnish the electricity, and under those circumstances the company is not responsible for the condition of the wires on the inside of the building. This disposes of any contention of negligence on the part of the defendant in failing to keep the wires insulated.

But it is insisted that there was a special duty resting upon the master to make the working place of the servant reasonably safe, and that this involved the duty to inspect the wires for the purpose of ascertaining whether it was reasonably safe for the servant to work there. It is not correct to say that there is always a duty on the part of the master to make the working place safe. Sometimes that devolves upon the servant himself. *Southern Anthracite Coal Co.* v. *Bowen*, 93 Ark. 140. And so it is in this case. Byrd was sent there to remove the gas wires and other apparatus from the building. His employer was guilty of no negligence in causing the alleged dangerous condition. It was not guilty of negligence in failing to warn him of the danger of coming in contact with electric light wires,

for the plaintiff's evidence shows affirmatively that he was properly warned on that subject, and that he, in turn, warned his helper to observe the same precaution. He knew, in other words, that it was dangerous for the wire which he was removing to be allowed to come in contact with a live electric wire, and it was a part of his duty to see that there should be no such contact. Under the circumstances it was, as before stated, a part of his duty to take the necessary precautions for his own safety, and no obligation rested upon the master to inspect the place in advance and make the necessary repairs, so that he could remove the gas apparatus in safety.

The proof in this case fails entirely to show any negligence on the part of the defendant or a failure in the discharge of any duty which it owed to its injured servant. Under the circumstances, the servant assumed the risk of any danger attending the work which he was sent there to perform. The instruction of the court was therefore correct, and the judgment is affirmed.