ARKADELPHIA MILLING COMPANY *v.* GREEN.

Opinion delivered March 8, 1920.

1. PRINCIPAL AND AGENT—SPECIAL AGENT.—A person dealing with a special agent must do so at his peril; and if the agent is without authority, the principal can not be held.

2. PRINCIPAL AND AGENT—GENERAL AGENT.—A person dealing with a general agent can hold the principal if the acts of the agent are within the general scope of the particular business intrusted to him.

3. PRINCIPAL AND AGENT—PRESUMPTION AS TO AGENCY.—One dealing with an admitted agent had a right, without notice to the contrary, to treat with him as a general agent and within the general scope of his authority.

4. PRINCIPAL AND AGENT—GENERAL AGENT.—One under a general employment to transact a particular kind of business for another is a general, and not a special, agent.

5. PRINCIPAL AND AGENT—IMPLIED AUTHORITY OF AGENT.—Where the agent of defendant having a contract for the entire output of a stave mill had authority to pay for labor in producing bolts and staves and to settle with the mill operator, and defendant honored checks drawn on it by such agent in the payment of goods furnished by plaintiff to the mill operator to facilitate the manufacture of staves and also a check drawn by another agent for goods similarly furnished, the former agent had implied authority to pledge defendant's credit to pay for goods so furnished.

6. FRAUDS, STATUTE OF—ORIGINAL OR COLLATERAL PROMISE.—In an action for the price of goods furnished to the operator of a stave mill for whose entire output defendant had a contract, evidence *held* to make it a jury question whether the promise of defendant's agent to pay for a bill of goods furnished to such operator was a collateral or an original undertaking.

7  FRAUDS, ·STATUTE OF—COLLAERAL PROMISE.—The fact that goods furnished to a stave mill operator on a promise of defendant's agent that defendant would pay for them were carried in the operator's account, instead of against defendant, was not conclusive that defendant's undertaking was collateral.

8.  FRAUDS, STATUTE OF—INSTRUCTION.—An instruction presenting plaintiff's theory that defendant's undertaking was original and not collateral *held* not objectionable as ignoring the question whether defendant's undertakiñg was ·collateral.

9.  FRAUDS, STATUTE OF—INSTRUCTION.—Where there was evidence tending to prove a direct promise on defendant's part to pay for goods furnished to a third person, an instruction that if defendant made the promise to pay for the goods it became an original undertaking and not within the statute of frauds was correct as presenting plaintiff's theory that the undertaking was original.

10.  TRIAL—INSTRUCTION—PROVINCE OF JURY.—In an action for the price of goods furnished to a third person, an instruction that the complaint was based upon the allegation of an original and express promise to pay and that if the jury found by a preponderance of the evidence that such a promise was made they should find for plaintiff, and setting forth the gravamen of the action and the necessity for plaintiff to sustain it by a preponderance, did not invade the province of the jury.

11.  SALES—ACCOUNT—INTEREST.—In an action for goods sold, interest was recoverable from the date of accrual of the right of action for balance due on account.

Appeal from Clark Circuit Court; *C. W. Smith,* Judge on exchange; reversed on cross-appeal.

*McMillan & McMillan,* for appellant.

1.   There is ·no evidence that it was within the scope of J. A. Carr's authority to pledge the credit of the Arkadelphia Milling Company for goods furnished to defendant, W. W. Brown, by Green. 105 Ark. 111; 132 Ark. 155; 31 *Id.* 212.

2.   The evidence establishes conclusively that plaintiff Green did not look solely to Arkadelphia Milling Company in the first instance for payment but rather as surety. 102 Ark. 435.

3.   A parol promise actually made by a fully authorized agent, if it is a collateral promise, is void un-

der the statute of frauds. It was error to give the fifth instruction for plaintiff. 102 Ark. 435. The third instruction given was also error. *Supra.*

*Isaac L. Awtrey, John H. Crawford* and *Dwight H. Crawford,* for appellee.

1. Carr had authority to bind the milling company as agent therefor. The cases cited by appellant do not apply, as they are not in point. 130 Ark. 86-89.

2. Carr was a general agent. 132 Ark. 371-3; 90 *Id.* 301; 48 *Id.* 138; 55 *Id.* 627-9; 25 *Id.* 219; 40 *Id.* 430. There was no error in the instructions complained of. 42 Ark. 285; 76 *Id.* 1; 103 *Id.* 219; 32 Neb. 269; 49 N. W. 240.

3. If appellee's evidence is true, it was an original undertaking and not collateral, and the verdict is conclusive against appellant. There is no error in instructions. On the cross-appeal the judgment should be reversed and judgment entered here for $213.58 and interest.

HUMPHREYS, J. Appellee instituted suit against appellant and W. W. Brown in the Clark Circuit Court, to recover $269.83, with interest at six per cent. per annum from August 23, 1917, on account of goods and merchandise sold and delivered to them.

W. W. Brown filed a separate answer, admitting appellee delivered the goods and merchandise to him, but alleging the sale and delivery was under an agreement with appellant to pay for them.

Appellant filed a separate answer, denying the sale and delivery of any goods or merchandise to it or to W. W. Brown for it on the dates alleged, and, by way of further defense, pleaded the statute of frauds as exempting it from liability on the debt of W. W. Brown for goods and merchandise delivered to him by appellee. Included in the answer was a cross-bill, alleging that appellant sold and delivered to appellee on August 1, 1917, four barrels of flour for $56.25, for which he prayed judgment, with six per cent. per annum from said date.

The cause was submitted to a jury upon the pleadings, evidence and instructions of the court, upon which a verdict was returned and judgment rendered for $213.58. Under proper proceedings, appellant has prosecuted an appeal from the judgment, and appellee a cross-appeal from the refusal of the court to allow interest on the amount of the judgment from the date of the last item of merchandise furnished.

A summary of the facts is as follows: Appellee, a merchant at Womble, had for many years prior to May, 1917, sold W. W. Brown, a stave mill operator, fifteen miles out from Womble, supplies on credit. Under contract with Brown, appellant was entitled to the output of the mill. Brown was allowed a checking account, and paid his labor and other mill expenses by drafts on appellant. On April 16, 1917, appellee wrote to appellant that Brown was behind with him, and, unless he could be assured of his money, he could not let Brown have any more goods. Shortly thereafter, appellant changed his system of doing business with Brown. It agreed to pay $2.50 per thousand for producing the bolts in the woods, the cost of hauling them to the mill, and to advance $5 a thousand on manufactured staves stacked on the mill yard. J. A. Carr, as agent of appellant, was sent to Brown's mill semi-monthly for the purpose of checking up the bolts, staves and labor incurred in making them, and for the purpose of paying them in the following manner: After ascertaining the status of Brown's account in the production of the staves, he issued checks against appellant to settle the labor accounts, and to Brown, or to others by Brown's direction, for any balance that might be due on the estimate of $2.50 per thousand for bolts, and $5 per thousand for staves. At the same time, Carr visited Golden's mill, some fifteen or twenty miles distant in an adjoining county, for the same purpose. Appellant had a contract for the output of that mill also.

Appellee testified that when J. A. Carr first came to Womble, he assured him that Brown's account was good;

that on the second trip he accompanied Brown to the store, checked over the account and paid it himself by check or draft on appellant; that Brown then asked if he could continue to get goods. He answered "not" unless he could be assured of his money every thirty days; that Brown said, "What about that, Mr. Carr?" That Carr replied, "You (referring to appellee) let him have the goods, and I will be here once a month and pay you;" that Carr also said he was representing appellant; that Carr made two settlements with him subsequent to that time; that on the first settlement, he received a check of date June 12, 1917, for $300, drawn on the Citizens National Bank of Womble, payable to W. W. Brown, signed "W. W. Brown, by J. A. Carr," and on the second settlement received a check, of date July 17th, for $200, payable to appellee at the same bank, and signed in the same manner as the first. The checks were filled out on blanks used by appellant in payment of bolts and staves, bearing appellant's business and place of business, and containing a direction to the bank to charge the amount to the stave department of appellant. Appellee testified further that the goods were charged to W. W. Brown on the books, being carried on the old account as a matter of convenience; that he sued Brown jointly with appellant because he was mixed up with the matter, and not because he looked to Brown for the account; that the goods were sold to Brown on appellant's credit; that on August 13, 1917, he wrote to appellant that it would inconvenience him to carry the account longer, and urged that he send Carr over by the 15th to check up Brown, but received no reply to the letter; that Carr enlisted in the army, and Patterson, appellant's representative, came in August and refused to pay the account, but bought goods from appellee to the amount of $118 to be delivered to Brown's mill, and paid for them by check drawn on appellant.

J. A. Carr testified that he did not promise to pay for goods furnished Brown nor pledge appellant's credit therefor, but that he told Green if Brown had anything

coming, after the labor was paid out of the $5 per thousand to be advanced, he would be glad to give Green a check for it, if requested to do so by Brown.

E. Nowlin, manager of the stave department of appellant, testified that J. A. Carr had no authority to pledge appellant's credit for goods to be delivered to Brown.

Appellant insists that the court erred in refusing to give its requested peremptory instruction, for the reason that the undisputed evidence showed, first, that J. A. Carr had no authority to pledge appellant's credit for the delivery of goods to Brown; and, second, that the undisputed evidence showed that the agreement, if any, between Carr and appellee, was a collateral and not an original undertaking, and, therefore, void, if made, by virtue of the statute of frauds, which was specially pleaded.

(1) A person dealing with a special agent must do so at his peril, and, if the special agent was without authority, the principal cannot be held. Not so, however, in dealing with a general agent. A person dealing with a general agent can hold the principal if the acts of the agent are within the general scope of the particular kind of business intrusted to him. *Liddell* v. *Sahline,* 55 Ark. 627. J. A. Carr's employment was not a special one and confined to a single transaction, but was a general employment to transact a particular kind of business for appellant. He was, therefore, a general agent under the rule announced in the case last cited. Again, he must be held as a general agent of appellant in his dealings with Green for the reason that he was appellant's admitted agent, and, being an admitted agent, Green had a right, without notice to the contrary, to treat with him as a general agent and within the apparent scope of his authority. It was said in the case of *Three States Lumber Co.* v. *Moore,* 132 Ark. 371, that: "One dealing with an admitted agent has the right to presume, in the absence of notice to the contrary, that he is a general agent

clothed with authority coextensive with its apparent
scope."

The evidence revealed the fact that J. A. Carr was
clothed with authority to pay for the labor which en-
tered into the production of the bolts and manufactured
staves, as well as to check up the bolts and staves and
settle with Brown on the basis of the cost of the actual
haul of the bolts, $2.50 per thousand for the production
thereof, and $5 per thousand for manufactured staves.
It also disclosed that appellant received the entire out-
put of Brown's stave factory; that the goods sent by
Green to the mill were for the purpose of facilitating the
manufacture of the staves; that appellant knew that the
goods were being used for that purpose, and, for two
months prior thereto, had honored checks drawn on it in
the name of Brown, by Carr, its agent, in settlement of the
goods and merchandise thus furnished; that in August,
its representative, J. C. Patterson, purchased from Green
a bill of goods for the use of Brown at the mill, to the
amount of $118 and paid for them by check drawn
on appellant. Under these facts, it was clearly im-
plied, and, therefore, within the scope of Carr's author-
ity to pledge the credit of appellant to pay for goods
which entered into the manufacture of the staves. The
first reason, therefore, assigned by appellant in support
of its contention that the court erred in refusing its per-
emptory instruction is not sound.

(2)   The evidence was conflicting as to whether the
undertaking was collateral or original. It is true the
goods were charged on the books of appellee to Brown,
and not to appellant, and also true that appellee included
W. W. Brown as defendant in this suit. It is explained,
however, that he carried the account in the name of W.
W. Brown, after the alleged agreement, because it was
a matter of convenience, growing out of the fact that W.
W. Brown had been dealing with appellee for a number
of years. The fact of bringing suit against appellee was
explained by saying that it was brought simply because
Brown was mixed up in the matter. These explanations

differentiate the instant case from the case of *Millsaps*
v. *Nixon,* 102 Ark. 435, relied upon by appellant; so, it
cannot be said in this case, as was said in that, that the
manner of charging the account on the books rendered
it a collateral, and not an original, undertaking. With
the explanation, it became a disputed fact for determina-
tion by the jury. So, the second reason assigned by ap-
pellant, in support of its contention that the court erred
in refusing its peremptory instruction, is not sound.

It is insisted that the court erred in giving appellee's
fifth instruction, for the reason that it is not qualified
by the bearing of the statute of frauds upon collateral
undertakings. The instruction is as follows: "The de-
fendant, Arkadelphia Milling Company, is bound to the
plaintiff, W. C. Green, for the result of the apparent au-
thority of its agent, J. A. Carr; and if the jury find that
it was within the apparent scope of J. A. Carr's authority
to arrange for supplies to enable W. W. Brown to operate
his mill, they should find for the plaintiff, if they find that
said Carr did in fact promise to pay the account sued on
in this case."

This instruction was intended to present the theory
of appellee that the acts were within the apparent scope
of Carr's authority and that the agreement or promise
was an original undertaking. The statute of frauds has
no application to an original undertaking. In presenting
this theory of the case, the instruction contains no error.

It is also insisted that the third instruction, given
by the court, was erroneous for the same reason urged
against instruction No. 5. It carried the declaration of
law that, if the jury found from the evidence that the
milling company made the promise to pay for the goods,
it became an original undertaking, and, for that reason,
not prohibited by the statute of frauds. This was a cor-
rect instruction on appellee's theory of the case, and there
was evidence to support a direct promise on the part of
appellant, through its agent, to pay for the goods. There
was no error in giving it.

It is urged that the first instruction given by the court invades the province of the jury. The instruction outlined the issue by stating that the complaint was based upon an allegation of an original and express promise to pay the debt; that, if the jury found by a preponderance of the evidence that such a promise was made, they should find for the appellee. It set forth the gravamen of the action and the necessity for appellee to sustain it by a preponderance of the evidence in order to prevail. We do not think this in any way invaded the prerogative of the jury.

A great many objections were made to instructions given and to the refusal of instructions requested. It would unnecessarily extend the opinion to discuss all the objections made and exceptions saved by appellant. Upon the whole, we think the case was submitted upon correct declarations of law, as applied to every phase or theory of the case.

Appellee's right of action accrued on August 23, 1917, and he should have been allowed six per cent. interest per annum on the balance due him on account after that date. The court committed error in refusing to allow him interest on the amount of the recovery from the date his cause of action accrued, towit: on August 23, 1917.

The judgment is therefore affirmed on the direct appeal, and reversed on appellee's cross-appeal, with judgment here for $213.58, with interest thereon at the rate of six per cent. per annum from August 23, 1917.