SOUTHERN BAUXITE COMPANY *v.* BROWN-PEARSON CASH
FEED STORE.

Opinion delivered November 15, 1926.

1.  PRINCIPAL AND AGENT—EVIDENCE OF AUTHORITY.—Evidence *held*
to sustain finding that an agent had authority to represent the
defendant corporation.

2.  CORPORATIONS—LIABILITY FOR ACTS OF AGENTS.—Where a corpora-
tion clothes a particular agent with the apparent authority to act
for it in a particular business or transaction as to the person
dealing with him in good faith, it will be bound the same as if
such apparent authority were real.

3.  FRAUDS, STATUTE OF—COLLATERAL UNDERTAKING.—A verbal agree-
ment by defendant's agent that an account should be charged
to the defendant for the use of a third person is not a collateral
undertaking within the statute of frauds.

4.  FRAUDS, STATUTE OF—COLLATERAL UNDERTAKING—INSTRUCTION.—
Where there was evidence tending to prove that defendant's
agent verbally authorized an account to be charged against defend-
ant for the benefit of an employee, it was not error to instruct

that, where a party undertakes to pay for goods to be furnished to his employees, it is an original undertaking and not within the statute of frauds.

5.    SALES—LIABILITY OF BUYER.—Where a corporation agreed to pay for mule feed furnished to one paid for his work by it, it is liable for the price, whether he was working as independent contractor or as employee.

6.    TRIAL—INSTRUCTION SINGLING OUT PART OF WITNESS' TESTIMONY.— An instruction which singled out a portion of the testimony of a witness and made a recovery to depend on it, to the exclusion of other parts of his testimony, was properly refused.

7.    TRIAL—MODIFICATION OF INSTRUCTION.—Where appellant asked an incorrect instruction, it cannot complain of a modification which contains nothing prejudicial to appellant, and would have been proper if a correct instruction had been requested.

8.    APPEAL AND ERROR—SCOPE OF OBJECTION.—Where appellant made specific objections to instructions, it will be deemed to have waived other objections.

Appeal from Saline Circuit Court; *Thomas E. Toler,* Judge; affirmed.

STATEMENT BY THE COURT.

Brown-Pearson Cash Feed Store, a corporation, sued the Southern Bauxite Company, a corporation, to recover the sum of $655.62 for merchandise alleged to have been sold to the defendant. The defendant denied that it was indebted to the plaintiff, and denied that it purchased any of the merchandise in question from the plaintiff.

Chester Carter, the manager of the Brown-Pearson Cash Feed Store at Benton, Arkansas, was the principal witness for the plaintiff. In June, 1924, Clem Gaunt, who was working for the Southern Bauxite Company, came into the store of the plaintiff and wanted to buy some feed, and proposed to start an account. Carter agreed to sell him some feed for the plaintiff, and also agreed upon the price of the feed. The first order was delivered by the plaintiff to the defendant on June 25, 1924. Payments were made every three or four days at first, and then it was agreed between the parties that payments should be made every two weeks.

About two weeks after the first order was delivered by the plaintiff to the defendant, Carter went back to

the store of the defendant for the purpose of selling it some oats and also a mixed feed called Omalene. Gaunt told him that J. J. Ferrell was coming down there to take charge of their mules and was also going to bring some more mules. Gaunt said that Ferrell would need some feed for his mules, and that "we [referring to the defendant] will feed them and will get what he wants." Again, Carter was asked what Gaunt said about feeding Ferrell's mules, and said: "He said, send this feed on the bill as the rest, but write under it 'By J. J. Ferrell,' what he gets, and that is the way I have done it all. If I sent them bills, I would send them to the Southern Bauxite Company, by J. J. Ferrell." Carter further stated that he did this under the instruction of Clem Gaunt, who was working for the defendant.

Payments were made from time to time until November 10, 1924. At this time the sum of $655.62 was the balance due plaintiff for the feed furnished. Gaunt, at that time, notified the plaintiff not to furnish any more feed, and no items were furnished after that except upon a special order, which was paid by the defendant.

On cross-examination, Carter was asked if Clem Gaunt did not tell him that the defendant was going to sell its teams to Ferrell, and that the plaintiff could get his business just as it had been selling to the defendant, and he answered: "Well, Clem told me they were going to sell to them. I said, 'You will stand good for the feed?' and he said, 'Yes, run it through just like it had been.' " Later on he stated, on cross-examination, that he understood that he was selling the feed in question to the Southern Bauxite Company, and did not understand that he was selling the feed to Ferrell. When payments were made on the account, he supposed that they were made by the defendant.

Another salesman, who represented the manufacturer of the Omalene feed, was present when Carter and Gaunt had the conversation about the plaintiff furnishing feed to Ferrell and charging the same to the defendant, and corroborated the testimony of Carter. He said

that the sale was made to the Southern Bauxite Company, and that the negotiation took place with Clem Gaunt, the bookkeeper.

J. J. Ferrell was also a witness for the plaintiff. According to his testimony, he carried seventeen or eighteen mules with him and took over eighteen mules from the Southern Bauxite Company when he went to work for it. He executed a mortgage to the Southern Bauxite Company for the mules purchased from it. When his feed would run out, the Southern Bauxite Company would order feed for him with its own feed. Ferrell never had any transactions with the plaintiff.

Clem Gaunt was the principal witness for the defendant. According to his testimony, he was the defendant's bookkeeper, and purchased some feed from the plaintiff for the defendant in June, 1924. About the first of June, 1924, the defendant sold its mules to J. J. Ferrell, and did not buy any more feed from the plaintiff. Gaunt told Carter that Ferrell had purchased the mules from the defendant, and was going to get out ore for it. He further told Carter that he would deduct the price of any feed that Ferrell might buy from the plaintiff from his pay. He denied that he agreed with Carter that the feed which should be furnished by the plaintiff to Ferrell should be charged to the defendant. He said that he had no authority to make such an agreement and no authority to buy feed, except such authority as was given him by the manager of the company. He admitted that the feed which he had bought in June from the plaintiff for the defendant was purchased by the authority of the defendant.

Other evidence was introduced by both parties, but the above is sufficient to show the issues raised by the appeal. The jury returned a verdict in favor of the plaintiff, and from the judgment rendered the defendant has duly prosecuted an appeal to this court.

*Brouse & McDaniel,* for appellant.

*W. A. Utley,* for appellee.

HART, J., (after stating the facts).   It is earnestly insisted by counsel for the defendant that the evidence is not legally sufficient to support the verdict.

Counsel first insist that the evidence is not sufficient to show that Gaunt had any authority to act for the defendant in the purchase of the feed in question. According to the testimony of Carter, Gaunt had been working for the defendant about two months before it opened any account with the plaintiff.   Gaunt was known as the book-keeper of the defendant, and acted for it in opening an account for the purchase of feed in the month of June, 1924.   Gaunt admitted that he bought the items on the account in June, 1924, and that he had authority from the defendant to make the purchase.   He said, however, that he had special authority from the manager of the company to make the purchase.   According to his testimony, he never authorized the plaintiff to furnish feed to Ferrell and charge the same to the plaintiff.   According to the testimony of Carter, he did make such an agreement.   The jury found in favor of the plaintiff and, by its verdict, accepted the testimony of Carter as true.   This would make a case where the undisputed evidence shows that Gaunt had the authority to open an account with the plaintiff for the purchase of mule feed from it.   The defendant sold its mules to Ferrell about the first of July, 1924.   The plaintiff continued to furnish feed to Ferrell, and charged the same to the defendant by Ferrell. This was pursuant to an agreement between Carter and Gaunt, according to the testimony of the former.   Under these circumstances, the jury might have found that Gaunt was acting within the apparent scope of his authority in purchasing the mule feed.   The defendant knew that Gaunt had opened an account with the plaintiff for the purpose of the purchase of mule feed by it in June, 1924.   If it intended to limit or restrict his authority as to the purchase of feed after the first of July, 1924, it should have notified the plaintiff of that fact.   Carter's testimony brings the case within the rule that, where a corporation clothes a particular agent with the apparent

authority to act for it in a particular business or transaction, as to the person dealing with him in good faith, it will be bound the same as if such apparent authority were real. *Moore* v. *Ziba Bennett & Co.,* 147 Ark. 216, 227 S. W. 753; *Thompson* v. *Collier-Reynolds Grocery Co.,* 155 Ark. 355, 244 S. W. 355; *Austin Western Rd. Mch. Co.* v. *Grant Co.,* 164 Ark. 228, 261 S. W. 283; *Empire Rice Mill Co.* v. *Stone,* 155 Ark. 623, 245 S. W. 16; *Arkadelphia Milling Co.* v. *Green,* 142 Ark. 565, 219 S. W. 319; and *Three States Lumber Co.* v. *Moore,* 132 Ark. 371, 201 S. W. 508.

It is next insisted that the evidence is not legally sufficient to support the verdict, because, under the testimony of the plaintiff, it was a collateral undertaking. In making this contention, counsel rely upon the testimony of Carter, in one place, where he asks Gaunt if the defendant will stand good for the feed. Carter, however, explained what he meant by this expression, and said that it was his understanding that the account was to be charged to the defendant, and that it alone would be liable to the plaintiff. The account was charged to the defendant, by J. J. Ferrell, because Gaunt asked Carter to charge it that way, and that, under their agreement, the defendant alone was liable to the plaintiff for the feed purchased and sued for in this action. Hence we hold that this assignment of error is not well taken.

The next assignment of error is that the court erred in giving instruction No. 5, which reads as follows: "You are instructed that, where a party undertakes to pay for goods to be furnished to his employees, it is an original undertaking and not within the statute of frauds as a promise to pay another's debts."

In their brief, counsel say that there was no evidence that Ferrell was an employee of the defendant, and that the evidence shows that he was an independent contractor and not an employee of the defendant. At the trial of the case the counsel for the defendant made a specific objection to the instruction, on the ground that all the evidence showed that Ferrell was an independent

contractor, and that the undisputed evidence showed that, even though the defendant promised to pay the account, it was not an original undertaking.  As we have already seen, there was evidence upon which the jury might find that the promise of the defendant to pay the feed account of Ferrell was an original undertaking.

It is also fairly inferable that Ferrell was an employee of the defendant.  At one place in his testimony he stated that he worked for the Southern Bauxite Company.  The undisputed evidence shows that he was engaged in getting out bauxite ore for the defendant.  As far as this case is concerned, it does not make any difference whether he was getting it out as an independent contractor or as an employee.  The undisputed evidence shows that he was being paid for his work by the defendant.  It would be equally liable whether he was working as an independent contractor or as an employee.  The sole question was whether or not the defendant agreed to pay for the mule feed in question.  Its defense was that no such an agreement was made, or that, if such an agreement was made, it was void under the statute of frauds.  Hence we hold that this assignment of error is not well taken.

The next assignment of error relates to a modification of instruction No. 5, asked by the defendant.  The instruction, as requested, reads as follows:  "You are instructed that, even though you may find from the evidence in this case that Clem Gaunt told the manager of plaintiff herein that the company would stand good for the feed, this would not be sufficient to bind the defendant company, and you will so find."

The court modified the instruction by adding to it the following:  "Unless you further find that the said Clem Gaunt was acting within the scope of his authority."

The instruction as requested by the defendant was erroneous, because it tells the jury that, even though it may find from the evidence that Gaunt told Carter that the defendant would stand good for the feed, this would not be sufficient to bind the defendant, and the

jury should so find.    The instruction as requested would be erroneous, because it does not take into consideration the other testimony of Carter, which, if believed by the jury, would make the undertaking of the defendant an original and not a collateral one.    The instruction, as requested, was faulty because it singles out a portion of Carter's testimony and makes the right of the plaintiff to recover to depend upon this isolated portion of the testimony.    The modification placed upon the instruction by the court was not erroneous if it had been tacked on to a proper instruction.    If the defendant had requested the court to instruct the jury that, even though it might find from the evidence of Carter that the company would pay for the feed, this would not be sufficient to bind the defendant, unless it should further find that Gaunt was acting within the scope of his authority, this would have been a proper instruction, and should have been given.    As we have just seen, the defendant was not entitled to the instruction as requested at all, and it cannot complain of the modification which did not add anything prejudicial to the defendant's case, and which would have been proper if the defendant had asked a correct instruction.    *Harrington* v. *Los Angeles Railroad Co.,* 140 Cal. 514, 74 P. 15, 63 L. R. A. 238, 98 Am. St. Rep. 85; and *Southern Railway Co.* v. *Howell,* 135 Ala. 636, 34 So. 6.

In this connection it may be stated that neither of the instructions quoted above are in proper form, but the defendant made specific objections to each of them, and, on that account, will be deemed to have waived other objections to them.    *Southern Anthracite Coal Co.* v. *Bowen,* 93 Ark. 140, 124 S. W. 1048.

We find no reversible error in the record, and the judgment will therefore be affirmed.