## St. L., I. M. & S. R'y v. Morgart's Adm'x.

1. RAILROADS: *Duty to maintain perfect road-bed.*

   The duty of a railroad company to the public, to maintain, under all circumstances, a firm road-bed and safe track, does not extend universally to employes. The track requires frequent repairs and renewals, and gravel and construction trains must necessarily pass over unsafe portions of the road to transfer materials for repairs, and all that is required of the company under such circumstances is to give employes on these trains timely notice of the insecurity, to enable them to adopt the necessary precautions to avert danger.

2. SAME: *Contributory negligence.*

   The conductor of a train has control of its speed, and if he suffers it to be run over an insecure road above the speed allowed by the rules of the company, and is injured, he is guilty of contributory negligence, and cannot recover damages for the insecurity of the road.

3. SAME: *Same: Injury to conductor from negligence of the engineer.*

   The conductor of a railroad train cannot recover for an injury received through the negligence and misconduct of the engineer in running the train, while subject to his orders, unless he be free from fault, and the company be negligent in employing or retaining the engineer in its service.

4. SAME: *Injury from fellow-servant.*

   A conductor on a railroad train cannot recover from the company for an injury resulting from the negligence or misconduct of the engineer in running the train, on the ground that he was retained in service after the notice of his unfitness, without proving that the company retained him after they had reasonable ground to believe, either from his general reputation or his conduct on particular occasions, that he was not a suitable person to entrust with an engine.

5. MASTER AND SERVANT: *Injury from fellow-servant.*

   If a servant knows as fully as the master, of the unfitness of a fellow-servant, and

yet voluntarily continues in the service, he waives the master's negligence in employing him, and assumes the risk of injury from the fellow-servant's negligence.

APPEAL from *Miller* Circuit Court.

Hon. C. E. MITCHEL, Circuit Judge.

*Dodge & Johnson* for Appellant.

1. While it may be the duty of a railroad, *to the public*, to provide and maintain a firm road-bed and safe track at all times, it is not so as to its employes. One of the ordinary duties and risks of an employe on a gravel train, whose duty it is to assist in keeping up the road-bed, is the passing over track not always safe and secure. The extent of the company's liability goes no farther than the warning, by usual and customary signals, that a defect exists, against which the employe must guard by proper caution. *49 Mich., 495; 10 Ind., 554; 8 Am. & E. R'y Cases, 110.* The unsafe condition of the track *was not* the proximate cause of the accident, but the high rate of speed. See also, *5 A. & E. R'y Cases, 508; Ib., 515; 12 Id., 213; 15 Id., 153.*

But if the work on the trestle was done in an imprudent and unsafe manner, as to the insecure condition of the track as left by the bridge gang, it was only the negligence of fellow-servants, and the employer is not liable. *128 Mass., 8.* But the record shows that upon the theory of *contributory negligence*, in disregard of general and special warnings, his own negligence was the sole proximate cause of the injury.

2. The engineer and conductor of a gravel train are fellow-servants. *2 Thomps. Negl., p. 1038.* It is the duty of the employer to use only ordinary care in selecting employes. *Ib., pp. 982–4.* The employer is not the guarantor or insurer of the safety of his employes. *84 N. Y., 61; 49 Mo., 167; 7 Laus. N. Y., 67; 8 Kan., 647; 38 Pa. St., 104; 59 Id., 239; 51*

*Cal., 116; Ib., 255; 3 Dillon, 319 and notes; 9 N. W. Rep., 273.* As to the degree of care to be exercised respectively by master and servant, *9 N. W. Rep., 579; 8 Ib., 145.*

The presumption is that the employer *has used* ordinary care in selecting employes, and the burden of proving the contrary is on the party alleging it. The *mere fact* of incompetency is not sufficient to throw the burden of proof on the employer to show that he exercised ordinary care in employing an incompetent servant. *71 Mo., 202; Wood Mast. & Serv., Secs. 419, 420.* When the employe suffering injury knew, or had equal opportunity with the employer to know, the incompetency of a fellow-servant causing the injury, he assumes the risk. *Wood Mast. & Serv., Secs. 422–3.* See also *11 N. W. Rep., 24; Ib., 529; 17 Id., 420; 20 Id., 788; 108 Ill., 538; 57 Cal., 15; 2 Thomps. Negl., pp. 1008, 1015; 49 N. Y., 521.* If he had equal opportunities, (and he had better, as he was the superior officer, running on the same train,) with the employer, to know the incompetency of a fellow-servant, and continues to work without complaint or protest, he assumes the risk. That they were fellow-servants, see *3 Baxter, 59 Tenn., 426.*

3.   Review the evidence in detail, and contend that the injury was caused by Morgart's own negligence, in running at great speed, contrary to rules, and in disregard of signals and warnings, and also in making up his train. Review also the instructions given and refused, and contend that those given over objection were erroneous and misleading, and those refused as asked or modified were proper. Citing authorities *supra.*

*Scott & Jones* for Appellee.

The track was unsafe, and the bridge foreman did not use even ordinary care to provide a safe track even for a gravel train; no one was at the station with signals. The engineer

was incompetent and reckless, which was known or should have been known to the company. It was not contributory negligence to run with a reversed engine, or to make up a train with the caboose next to the engine. There was no rule or regulation locating the place for the caboose, and the evidence being conflicting as to running with a reversed engine, the jury might well have found no negligence on Morgart's part as to these.

1. The master is bound to use ordinary care, to furnish suitable machinery and road-bed, and to see that it is kept in repair. *Wood on Mast. & Serv., Secs. 687, 329; Whart. on Neg., Secs. 210, 211; 35 Ark., 602; 44 Id., 524.*

2. The master is responsible, if there be negligence in the employment or retention of an incompetent fellow-servant. *Whart. on Neg., Sec. 224; Wood on M. & S., Sec. 418.*

3. If the injury be caused, both by the negligence of the master combined in failing to furnish suitable road, and negligence of a fellow-servant, then the master is responsible. *Whart. on Neg., Sec. 227; 35 Ill., 217; 106 U. S., 700; 95 N. Y., 546; 10 Gray., 274; 3 Vroom, 151; 46 Wis., 497; 135 Mass., 575.*

Contributory negligence of the plaintiff is a matter of defense, and must be proven affirmatively by the party alleging it. *Sh. & Red. on Neg., 3 ed., Sec. 44; Whart. on Neg., Sec. 423; 15 Wall., 491; 93 U. S., 291; 24 Ala., 112; 35 Cal., 153; 12 Bush., 41; 31 Md., 357; 22 Minn., 152; 51 Mo., 190; 30 N. H., 188; 29 N. J., 244; 24 Oh. St., 631; 76 Penn. St., 631; 12 R. I., 447; 46 Tex., 356; 41 Wis., 105; 3 Sawy., 500; 43 Ark., 226.*

A bridge foreman and a conductor of a gravel train are not fellow-servants. The foreman is the *alter ego* of the company to build and repair bridges for *all* defendant's trains to cross. *10 Otto, 213; 55 Vt., 84; 40 Ark., 524.*

20———45

SMITH, J.   The plaintiff's intestate was the conductor of a gravel train on the defendant's road, and was killed in a wreck which occurred near the bridge over Hurricane creek.   The complaint counted upon negligence in the defendant company in three particulars:    1,   In not providing a secure track; 2,   In not causing signals to be given to the train before it reached the place of danger; and,   3,   In the employment of a reckless and incompetent engineer.

The answer denied specifically the alleged acts of negligence and averred that the deceased lost his life by his own negligence, or by that of a fellow-servant.   A jury trial resulted in a verdict and judgment for the plaintiff for $10,000.

Morgart, the deceased, had had an experience of twenty-two years in the operation of railroads.   He had been in the defendant's service some two months, and for the last six weeks of that time had acted in the capacity of conductor of a gravel train, which plied daily between the sand-pits near Benton, and Little Rock and points beyond.   The engineer of his train, during this period, was one Campbell.   Five miles north of Benton the railroad crosses Hurricane creek; and the trestle supporting the bridge over it was undergoing repairs, new stringers, cross-ties, etc., being put in.   Work of this nature had been proceeding at the bridge for several days, and this was known to Morgart.   Boards with the printed words, " Slow " were kept posted in both directions at the distance of half a mile from the bridge.   These were intended for the eye of the engineer, and those in charge of the train, and signified: " Run from four to six miles an hour."   When the progress of the work obstructed the track, or rendered it impassable, flag-men were stationed at the same distance from the bridge to flag down the train.   This signal meant " Stop, and don't attempt to pass the obstacle until the word of command is given."

On the morning of the fatal day, the foreman of the bridge gang had seen Morgart at Benton and had warned him that they would be at work on this bridge that day, and to keep a look-out. Between 7 and 8 A. M. the gravel train came in sight, and, with slackened speed, passed over in safety and proceeded northwards. Several other trains also passed in the interval between that time and Morgart's return shortly after noon. The bridge force were now at dinner, a few yards away from the track. Before ceasing work, the track was left in line and in fit condition for the passage of trains that were run carefully, and the flag-men were called in.

Approaching Hurricane creek from the north, for a mile or more, the grade descends at the rate of fifty-two to fifty-eight feet to the mile. The train rushed down this grade and over the bridge at a speed variously estimated between twenty and thirty miles an hour. The engine was running backwards, the tender being in front; next came the caboose, in which Morgart rode; then followed twenty or more empty flat-cars. As the train approached the bridge Morgart was observed standing in the door of the caboose, and making signals either to the engineer or the brakemen. The engineer was using steam. The tender and engine passed over the trestle, but left the track soon afterwards and ran upon the cross-ties for seventy or one hundred yards. When the train was brought to a standstill, all of the cars were south of the trestle, the nine rear cars standing on the rail. The others were off the rail, and most of them badly torn up. The caboose was broken into fragments, and Morgart was dead.

The jury could not have found that the proper danger signals had not been displayed. The uncontradicted evidence is that the "slow" boards were out. The track was not impassable for trains running at the speed they indicated. Hence there was no impropriety in withdrawing the flagmen.

Neither could the jury have found that the condition of the track, or of the trestle, was the immediate cause of the wreck.

The line of spikes fastening the cross-ties to the stringers and some of the spikes for holding the rails to the ties had been drawn out in the morning, and had not been replaced at noon. But there is no reason to suppose that these things had any share in bringing about the wreck. No part of the structure gave way; the bridge timbers were not moved from their po-. sition; and there was no spreading of the rails on the track over the bridge. A "tight rail" had also been observed about noon, near the south end of the trestle. The rail had expanded under the heat of an August sun, and there was a kink in it. But the foreman, a careful and competent man, had, with his own hands and the assistance of one of his gang, righted this rail and had left it straight and in proper position. Every car of the wrecked train passed over the rail without being thrown off at that point. And after the wreck was cleared away, and before the defect in the rail had been further remedied, the delayed trains, going in both directions, passed in safety.

1. RAILROADS: Duty to keep perfect road-bed.

The charge of the court on this branch of the case was erroneous and misleading. The jury were told, in substance, that the company owed it to their servants to maintain, under all circumstances, a firm road-bed and safe track. This is the measure of its duty to the public, but not universally to its employes. A railroad track is constantly wearing out and requires frequent renewals. And it is often necessary for gravel and construction trains to go over and upon unsafe portions of the track to transfer the materials needed for making repairs. The duty of the company under such circumstances is to give timely notice of the insecurity, so that the necessary precautions may be adopted to avert danger. *Henry -v. L. S. & M. S. R'y Co.,* 49 *Mich., 495.*

2. Contributory negligence.

The testimony on both sides shows that the proximate cause of the disaster was the high speed at which the train was moved, in disregard of the danger signals.

Morgart was probably guilty of contributory negligence in making up his train; not so much, perhaps, in running with a reversed engine, as in having the caboose next to the engine, instead of at the rear, its customary and appropriate place. It belonged at the rear end, because in that position the conductor may supervise the whole train, and see that his men do their duty; and also because being nearly twice as heavy as an ordinary freight car, and being furnished with double brakes, it can be made to act as a powerful clog upon the motion of the train. Its efficiency in checking the speed is impaired when it is put in the forward part of the train. The arrangement of the order of his cars is a matter over which the conductor has supreme control. But there was on this road no inflexible rule, nor uniform custom, requiring the caboose to stand at the end of the train. Therefore, it was in the power of the jury to resolve all doubts on this head in favor of the plaintiff.

But it was impossible for the jury, with a proper regard for the undisputed facts of the case, to absolve Morgart from blame in the matter of the accelerated speed. The rules of the company, printed on its time card and furnished to him, positively forbade him to run faster than fifteen miles an hour under any circumstances, and subjected the engineer to his orders. The proofs show that upon descending grades the conductor, with his brakemen, can more effectually control the speed than the engineer, who can only shut off steam. Both were at fault here, first, in running above the maximum rate of speed prescribed; and again, in running the last half mile above the rate of six miles an hour.

Now, Morgart's administrator cannot recover against the company for an injury, resulting in death, caused by Morgart's own negligence. Neither can she recover if the injury was due to the negligence and misconduct of Campbell, while he was subject to the orders of Morgart, unless the deceased was free from fault and the company was negligent in employing or

3. SAME:— Injury to conductor from negligence of engineer.

retaining Campbell in its service. For the two were fellow-servants, engaged in the same employment, or else Morgart was the superior officer in charge, and the presumption is, the train was operated under his orders. *Ragsdale v. M. & C. R. Co.*, *3 Baxt.*, *59 Tenn.*, *426; Dillon v. U. P. R. Co.*, *3 Dillon, 319; C. C. & I. C. R'y v. Troesch; 68 Ill.*, *545; Dewey v. C. & N. R. Co,, 31 Iowa, 373.*

Some of the recent cases hold that a subordinate officer of a train, such as an engineer or brakeman, is not a co-servant of the conductor, within the meaning of the rule which exempts the master from liability. But this distinction cannot benefit the plaintiff, for it is founded upon the principle that the inferior servant is bound to obey orders, and that the conductor, whose right and duty it is to command the movements of the train, and to control the persons employed upon it, represents the company while performing these duties. *Little Miami R. Co. v. Stevens, 20 Ohio, 416; C. & M. Railroad v. Ross, 112 U. S., 377; Moon's Adm'r v. R. & A. R. Co., 78 Va., 745; S. C., 49 Am. Rep.; 401.*

Campbell had been in the company's service for six or seven years, first as a fireman and afterwards as a locomotive engineer; and was still in its service at the date of the trial. No attempt was made to show that the company had not exercised due caution in his original hiring, or his subsequent promotion. But evidence was adduced that he had the reputation of being a reckless runner and that he had been implicated in previous wrecks. And it was contended that the company knew, or could have known, of his unfitness, and should have dismissed him.

On the other hand, it was shown that Campbell bore an excellent character among his superior officers in the operating department of the road, for skill and prudence; and that in the only serious wreck in which he had been involved the company had set on foot an investigation, the result of which was that

the conductor of the train, and not Campbell, was to blame; and the conductor was suspended in consequence. The master mechanic, whose duty it is to employ and discharge engineers, swore that he had never heard aught, down to the day of the trial, derogatory to Campbell's reputation as an engineer.

The burden was upon the plaintiff to show that the company had retained Campbell after having cause to believe, either from his general reputation, or his conduct on particular occasions, that he was not a suitable person to entrust with an engine.

**4. Injury from fellow-servant.**

If Campbell was notoriously incompetent or reckless, Morgart enjoyed excellent opportunities to become acquainted with his reputation, and also whether that reputation was deserved. Campbell was under him for six weeks, yet he made no complaint.

The rule is, that if the servant knows, as fully as the master, of the unfitness of a fellow-servant, and yet voluntarily continues in the service, he waives the master's negligence and assumes the risk. *Laning v. N. Y. C. R. Co., 49 N. Y., 521; S. C. Thomps. on Negl., 932 and notes.*

**5. SAME.**

The jury were, in effect, so instructed. If, therefore, their verdict was based upon Campbell's recklessness in handling his engine and the defendant's responsibility for the result by keeping him in its service, they must either have forgotten that Campbell had been serving under Morgart for the six weeks immediately preceding, or they failed to apply the principle of law above announced, to this fact. For actual knowledge of Campbell's unfitness, or reputation, was not brought home to either party. And the means of knowledge were equally accessible to both, if indeed Morgart did not enjoy superior opportunities for observation.

Upon no sound theory of the law can the verdict be reconciled with the facts in proof.

It would be unprofitable to review *seriatim* the numerous directions that were given to the jury, and the requests that were refused or modified. For the purposes of a second trial, their correctness can generally be tested by this opinion.

Reversed.