BURDETTE COOPERAGE COMPANY *v.* BUNTING.

Opinion delivered May 4, 1914.

1. MASTER AND SERVANT—INJURY TO SERVANT—NEGLIGENCE QUESTION
FOR JURY.—Where defendant's servant was injured and died as a
result of the breaking of a guy wire and the falling of a derrick
at which he was working, and there was evidence that defendant
was negligent, the question should be submitted to the jury.
(Page 48.)

2. MASTER AND SERVANT—INJURY TO SERVANT—CONCEALED DEFECTS—AS-
SUMPTION OF RISK.—A servant is not required to take notice of
defects which are not obvious, nor ordinarily incident to his em-
ployment; and the servant does not assume the risk of the same.
(Page 50.)

3. MASTER AND SERVANT—INJURY TO SERVANT—DEFECTIVE APPLIANCES—
KNOWLEDGE OF MASTER.—Evidence that the employees of defendant
knew that a derrick used by defendant was dangerous, is admissible
for the purpose of showing that defendant knew, or might have
known, by the exercise of reasonable diligence, that the instru-
mentality was defective and unsafe. (Page 51.)

4. MASTER AND SERVANT—INJURY TO SERVANT—DEFECTIVE APPLIANCES—
EVIDENCE.—Where deceased was injured by the breaking of a guy
wire supporting a derrick at which he was working, evidence that
some of the wires composing the main guy wire, which broke and
injured the deceased, were not inserted through the hole at the
top of the mast pole, is competent, showing the guy wire to be
worn and old, and therefore in a defective condition. (Page 52.)

5. TRIAL—IMPROPER QUESTION—PREJUDICE.—The prejudice arising from
the asking of an improper question is removed by the action of the
court in sustaining counsel's request to eliminate all reference to
the subject-matter of the question from the case, and by a proper
instruction by the court as to the law on the question raised.
(Page 53.)

Appeal from Mississippi Circuit Court, Osceola Dis-
trict; *W. J. Driver,* Judge; affirmed.

STATEMENT BY THE COURT.

The Burdette Cooperage Company, for the purpose
of lifting, loading and otherwise handling logs at its
plant, used a derrick, two of the principal parts consist-
ing of a mast pole and a boom pole. The mast pole was
forty-two feet long, and was intended to stand in a per-

pendicular position, and to be held in such position by guy wires, one end of which was fastened to trees, stumps, or what is known as "dead men," and the other end was attached to a wrought iron or steel cap or plate on the top end of the mast pole. The holes through which the guy wires were to pass near the rim of the cap were cut straight or square through, leaving sharp edges. The edges were not rounded out nor were they lined with rings or shields to prevent the wearing away of the galvanized iron guy wire. The guy wire was softer than the plate or cap through which it passed. The naked wire should not have been allowed to touch the edges of the holes of the cap through which it passed as the sharp edges of the iron would wear and cut away the strands of the guy wire.

The derrick, in its use, had become loose so that the mast pole would swing back and forth some eight or ten inches, and as it swung it would jerk on the cable or guy wires on the other side. The boom pole was fastened to the mast pole near the lower end and stood at an angle of about forty-five degrees and swung around as occasion required. The mast pole and the boom pole were equipped with pulleys, cables, guy wires and implements of machinery necessary to constitute a working derrick.

Fred Bunting, on the 22d day of July, 1912, was in the employ of the Burdette Cooperage Company as a common laborer, and on the above day he was temporarily engaged as a hooker. There were two hookers, whose duty it was to adjust the hooks to the ends of the logs. When these hooks were fastened into the ends of the logs a signal would be given, the engine would start and the drum would wind up the cable to which the logs were attached, and in this way the logs would be slowly lifted. While lifting a log in this way one of the guy wires broke, causing the derrick to fall, which resulted in the injury to Bunting, from which he died the following day. He was conscious and suffered great pain from the time of the injury until his death.

The derrick had been put up about a year before, and had fallen down by reason of a heavy pull made on it. It had been reconstructed about two weeks before the injury by the company's millwright.

The above are substantially the facts, giving the evidence its strongest probative force in favor of appellee.

The appellee, as administratrix, brought this suit to recover damages for the injury to and death of Fred Bunting, alleging that by reason of the careless and improper manner in which the guy wire was fastened to the cap it worked loosely therein, the hole being much larger than the guy wire and as a result it wore and ground away said wire; that the wires were old and rust-eaten, rotten and so worn and in such a weakened condition that while the log was being lifted one of them gave way, causing the derrick to fall, whereby Bunting was struck and injured and afterward died from the result of such injuries.

The appellant denied the allegations of negligence set up in the complaint and pleaded affirmatively that the death of Bunting was the result of an accident, and also set up contributory negligence and assumed risk. The cause was submitted to the jury. The appellant asked the court to direct a verdict in its favor after the evidence was adduced, which the court refused, and to which ruling appellant duly excepted. No objection is urged to any other rulings of the court in the giving or refusing of instructions. A verdict was returned in favor of the appellee in the sum of $1,000 damages for pain and suffering and in the sum of $4,000 for the pecuniary loss to appellee by reason of the death of her husband. Judgment was entered for the sum of $5,000, and this appeal has been duly prosecuted. Other facts stated in the opinion.

*W. J. Lamb, H. T. Harrison* and *T. D. Wynne,* for appellant.

1. The accident and injury were inevitable. Webb's Pollock on Torts, p. 161.

2. The court erred in refusing to direct a verdict for appellant. 86 Ark. 289; 105 U. S. 249; 69 Ark. 402; 55 Ark. 163; 91 Ark. 260; 16 Ark. 236; 15 Ark. 118; 87 Ark. 576; 76 Ark. 436.

3. Appellee assumed the risks of his employment. 90 Ark. 407; 82 Ark. 534.

4. The court erred in admitting certain testimony. Jones on Evidence, p. 375; 99 Ark. 489; 96 Ark. 171; 100 Ark. 107.

*Gravette & Alexander* and *J. T. Coston,* for appellee.

1. Instructions Nos. 1 and 2 were correct. 2 Labatt on Master & Servant, 813; 54 Ark. 299; 67 Ark. 8; 113 S. W. 359; 203 U. S. 473; 77 N. Y. 82; 83 Am. Rep. 574; 119 S. W. 675; 87 S. W. 397; 99 Fed. 51; 106 U. S. 702; 4 Thompson on Negligence, § 4858; 1 Labatt on Master & Servant, § 31; 3 N. E. 577, 578; 21 S. E. 347; 42 Pac. 344; 67 Fed. 885; 25 N. E. 915. The worn and weakened condition of the guy wire contributed to the injury. Where several causes concur to produce certain results, any of them may be termed "proximate." 2 Labatt, 813; 54 Ark. 299; 67 *Id.* 8; 113 S. W. 359; 87 S. W. 397, and cases *supra.*

2. Evidence of the reputation of the derrick among employees was competent. 3 Labatt, 1030; 43 Ill. 338; 71 *Id.* 294.

3. Improper testimony if not prejudicial is not reversible error. 32 Ark. 346; 20 *Id.* 234; 52 Conn. 285; 163 S. W. 172; 4 S. W. 701; 70 Fed. 364; 8 Ala. 820.

4. Deceased did not assume the risk. 141 S. W. 1178.

5. The evidence makes a case of gross negligence.

WOOD, J., (after stating the facts). 1. The court did not err in refusing to direct the jury to return a verdict in favor of the appellant. It was a question for the jury, under the evidence, as to whether or not the appellant had exercised ordinary care to provide its servant Bunting with reasonably safe appliances with which to perform the work in which he was engaged at the time of his injury. The testimony of appellant's millwright,

who constructed the derrick, was to the effect that he used the usual material in the construction of the same and constructed the same in the usual manner that such machinery was constructed. He stated that the holes through the cap to which the guy lines were fastened were round holes, drilled out for the purpose of passing the guy lines through; that he run the guy lines through the holes, bent them over, parted the ends and brought them back on the main line and made them fast; that they were all fastened in that way. This way of fastening them he considered safe. Sometimes they are fastened with clamps; sometimes with half-hitches. These different ways are all safe. He had put up several this way. The wires could be fastened in the manner indicated "so fast and close that they would break before they would let go."

But there was testimony on behalf of the appellee tending to show that the falling of the derrick was caused by the breaking of one of the large cables; that soon after the accident, probably that evening, certainly the next morning any way, before the derrick was moved off the skidway, the cable was examined to ascertain the condition of the ends of the wires where the same were broken. The cable was broken where the edges of the wrought iron holes in the cap cut into it. There had been some jerking back and forth. Some of the ends of the strands were bright and some were not. Some of them had the appearance of having been broken before the accident. Some of the ends had turned dark. Half of the ends of the strands were dark, indicating an old break.

There was testimony tending to show that all derricks will fall when their guy wires are worn and broken. A piece of the guy wire, showing the broken end, was exhibited and identified as the end of the guy wire where the same had broken at the time of the injury complained of.

There was testimony on behalf of the appellee tending to show that the mast pole was loose, playing back

and forth a distance of eight or ten inches, and allowing the same to jerk, and that the holes through the plate on top of the mast pole was left without covering, exposing the strands of the guy wires to the edges of the wrought iron or steel plate, thereby causing the guy wires to be cut in two and worn off.

Notwithstanding the testimony of appellant's millwright that he constructed the derrick in the usual manner, and that he considered it safe, the above testimony on behalf of the appellee made it a question for the jury to say as to whether or not the appellant had exercised ordinary care to furnish a safe derrick.

2. Appellant contends that the falling of the derrick was an inevitable accident. Bunting, at the time of his death, was hooking tongs in the end of a log. He was assisted by a fellow-employee at the other end of the log. These employees stood at the opposite ends of the log and each hooked the tongs in the end next to him. They fastened their hooks in each end of the log and a signal was given to the derrick operator to lift the log. He made two or three efforts to lift same, and raised the log between three and six feet from the ground. While the log was suspended in this position the hooks of Tardy, Bunting's fellow-employee, pulled out, causing his end to fall to the ground instantly, and the derrick fell at the same time the hooks pulled out. It is contended by the appellant that the jerk caused by this fall caused the derrick to give way by breaking the guy wire opposite the suspended hook at or near the top of the mast pole. But this does not show conclusively that the falling or the jerk was the result of an accident. It was a question for the jury as to whether or not appellant was negligent in failing to so construct the derrick that it would not fall when subjected to such strains as shown by the above testimony. The slipping of the tongs or hooks from the end of the log, thereby causing the same to fall and producing a sudden jerk or strain upon the guy wires the jury might have found was one of the incidents of work of that character, which appellant, in

the exercise of reasonable care, should have anticipated and should have exercised ordinary care to have counteracted. It was a question for the jury as to whether or not, if such care had been exercised in the construction of the derrick, the same would not have fallen, notwithstanding the slipping of the tongs and the sudden dropping of the end of the log. The jury might have found that the exercise of ordinary care upon the part of appellant to properly construct the derrick would have prevented the breaking of the guy wires and the falling of the mast pole, and the resultant injury to Bunting.

3. The mast pole was forty-two feet high, and the plate to which the guy wires were fastened was on top of the same. If the holes in this plate were defective, as the jury might have found, and if the guy wires, by reason of the sharp edges of these holes and the jerking of the mast pole, had been cut and worn so as to render them incapable of holding the mast pole under the strain to which it was subjected, these were not obvious defects and therefore Bunting was not required to take notice of them. The jury might have found that they were caused by the negligence of the appellant. Bunting, therefore did not assume the risk incident to such defects. They were not risks ordinarily incident to the employment in which he was engaged, but were caused by the negligence of the master, were unknown to the servant and he did not assume them. *Asher* v. *Byrnes,* 101 Ark. 197.

4. If the defective condition of the holes through the cap plate, and the weakened condition of the strands of the guy wires caused thereby, contributed to the injury, and this was the result of negligence on the part of the appellant, it would be liable, notwithstanding the slipping of the tongs from the end of the log may have also concurred in producing the result. Such being the case, the negligence of the company was but one of the co-operating causes of the injury, without which, as the jury might have found, same would not have occurred. See 2 Labatt on Master & Servant, 813; *Railway Co.* v.

*Triplett,* 54 Ark. 299; *Kansas City, F. S. & M. Rd. Co.* v. *Becker,* 67 Ark. 1-8; *Marcum* v. *Three States Lumber Co.,* 88 Ark. 28-37.

5. Over the objection of appellant, appellee was permitted to testify that her husband, Bunting, was good to his family; that he was interested in the education and training of appellee's little girl; that he wanted to raise the child right and give it a good education. On cross examination it developed that the child was the daughter of appellee by her first husband. Further on in the trial another witness was asked whether or not Bunting took an interest in the education and training of the little girl, whereupon counsel for appellant remarked, "If the court please, I think it has come to a place where all reference to the little girl should be eliminated entirely," and the record shows that the court "sustained" counsel in his remarks.

The court, in its instruction on the measure of damages, told the jury that if they found for the appellee they would assess her damages at such sum as they found "from the evidence would compensate her for the loss of contribution from him for her support through life." The rulings of the court in sustaining the remarks made by the counsel and the instructions given on the measure of damages were tantamount to removing from the jury the testimony concerning the disposition of Bunting toward appellee's child. If the admission of this testimony was erroneous (which we do not decide), the rulings of the court, as above indicated, were sufficient to remove all prejudice to appellant that might have otherwise been caused thereby. See *Bunyan* v. *Loftus et al.,* 57 N. W. 685-687.

6. A witness was asked the following question: "Do you know whether or not it was generally understood from that time on to when Mr. Bunting was killed, by the old employees there, as dangerous?" (that is, that the derrick was dangerous). The witness answered, "Yes, sir." Appellant then objected to the question and an-

swer and his objection was overruled. There was no prejudice to appellant in the ruling of the court. "Common knowledge of the servants themselves who have to handle the instrumentality in question that it is an improper one for the purposes for which it is furnished" is admissible, says Mr. Labatt, as tending to establish notice on the employer's part of the defective character of the machinery. "It is not competent to prove the ultimate fact that the instrumentality was actually an unsuitable one." 3 Labatt on Master & Servant, 1030. Such testimony is competent for the purpose of showing that appellant knew, or might have known, by the exercise of reasonable diligence, that the instrumentality was defective and unsafe. See *Railroad* v. *Shannon,* 43 Ill. 338; *Railroad* v. *Fredericks,* 71 Ill. 294. See *St. Louis, I. M. & S. Ry. Co.* v. *Morgart's Admx.,* 45 Ark. 318-27.

7. The appellant complains because the court overruled its motion to strike out the testimony of certain witnesses to the effect that part of the wires composing the main guy wire, which was broken, were not inserted through the hole in the cap on the top of the mast pole. Appellant urges that this testimony was not relevant to the allegations of the complaint.

The court instructed the jury that the evidence could only be considered by them in so far as it tended to establish the allegations of the complaint that the guy wires were old, rusty and rotten and caused to be worn loose. There was evidence tending to show that some of the strands of the guy wire were dark and rusty, indicating an old break. In view of the instructions of the court, there was no error in admitting the evidence, for it was competent as tending to prove that the guy wire was rusty, old and worn, and therefore in a weak and defective condition.

Finding no reversible error, the judgment is affirmed.