ARKANSAS LAND & LUMBER COMPANY *v.* COOPER.

Opinion delivered November 27, 1922.

1. APPEAL AND ERROR—CONCLUSIVENESS OF VERDICT.—Verdict supported by evidence will not be disturbed on appeal.

2. MASTER AND SERVANT—DUTY TO FURNISH SAFE APPLIANCES—INSTRUCTION.—In an action for injuries to an employee thrown from a tractor when a defect in a set-screw caused a wheel to lock, in which there was evidence for the employer in support of the defense of assumed risk that the employee had knowledge of the defect and had been instructed to inspect and repair the tractor, and that he was injured while performing such service, an instruction that it was the employer's duty to exercise ordinary care to furnish the employee with safe appliances was erroneous as ignoring the defense of assumed risk.

3. MASTER AND SERVANT—SAFE APPLIANCES.—Generally, an employer is required to exercise ordinary care, not only to furnish his employees a reasonably safe place in which to work but also reasonably safe appliances; but if the servant knows that the appliance is dangerous and is engaged in the act of putting it in repair, he assumes the risk incident to the work of repair.

4. MASTER AND SERVANT—OBVIOUS DEFECT—ASSUMED RISK.—If a defect in an appliance was a patent and obvious one, an employee using it would not be relieved from assumption of risk merely because his foreman told him that the appliance had been repaired.

5. MASTER AND SERVANT—OBVIOUS RISK—QUESTION FOR JURY.—In an action for injuries to an employee thrown from a tractor because of a defect in a set-screw, where there was evidence tending to prove that the defect was obvious, it was a question for the jury whether the employee assumed the risk, notwithstanding his foreman told him that the defect had been repaired.

Appeal from Little River Circuit Court; *James S. Steel*, Judge; reversed.

STATEMENT OF FACTS.

E. T. Cooper sued the Arkansas Land & Lumber Company to recover damages for personal injuries sustained by him on account of the negligence of the defendant while he was in its employment.

The defendant denied negligence on its part, and pleaded assumption of risk on the part of the plaintiff.

E. T. Cooper was a witness for himself. He was twenty-three years old at the time he was injured on

the 13th day of September, 1921. He was receiving $2.75 per day, and had been in the employment of the company for four or five months at the time he was injured. He had been working in the electric department of the company's mill for about a month before he was injured. Before that he had worked in the garage department. He was injured while using a tractor at the defendant's mill. It had two tractors, Nos. 1 and 2. Both were run by mercury batteries, and were used in pulling lumber buggies around the mill yards. The tractors were constructed alike, but No. 1 was faster than No. 2. Each tractor was about six or seven feet long and had three wheels, two in the rear and a smaller one in front. The front wheel was used to guide the machine, and the rear ones did the pulling. The front wheel was attached to the machine by a steel fork constructed on the same principle as a bicycle. The front wheel was supported on a ball-bearing which was arranged so that it could be tightened, adjusted, replaced, or disassembled by a set-screw which held the nut that supported the fork in place. The fork was attached to a solid piece, which was crooked and extended to the left of the operator, as he sat on the front part of the machine, so that he could guide it. On his right was a lever which he used to turn on and off the current. When the set-screw, which was attached to the collar which held the fork to the handle-bar with which the machine was guided, worked loose, the nut would screw down and tighten the bearing and make it hard to steer the machine, and, if it was screwed tight enough, it would lock the machine. If you got to where you could not operate the steering apparatus, the machine would continue to run in the direction in which the front wheel was set. If it was set straight, the machine would run straight. If it was set in a circle, the machine would turn around. The machine had an automatic brake on it, which could be applied by the driver raising his weight off of his seat.

The plaintiff was familiar with the use of the tractor at the time he was injured, and had to some extent been repairing it under the directions of his foreman. The steering wheel had gotten out of fix, and the plaintiff had reported that fact to J. A. Smithson, his foreman, who promised to have it repaired. The plaintiff did not work for a few days after the foreman promised to repair the machine, on account of the illness of his wife. He returned to work on the morning that he received his injuries. His foreman told him to take tractor No. 2 into the mill yard for use, and directed him and the other helper to repair tractor No. 1. The tractors were kept at night in a little house to themselves for the purpose of having their batteries charged with electricity. This house was connected with the mill yard by a tramway eight or ten feet high and six or seven feet wide. It had 2 x 4 planks nailed down along its edges for the purpose of preventing the tractors from running off of the tramway. The plaintiff got on tractor No. 2 and began to back it along the tramway into the mill. The steering wheel turned around and became locked. The plaintiff endeavored to turn it straight again so that the tractor would run along the tramway, but could not do it on account of its being locked. He applied the foot brake as soon as possible, but the tractor jerked violently and threw him to the left of the tramway, and the tractor itself ran off on the right side thereof. The plaintiff was thrown so violently from the tractor that he was severely injured.

J. A. Smithson, the brother-in-law of the plaintiff, and the foreman of the defendant under whom the plaintiff worked, was the principal witness in behalf of the defendant. He described the tractor in much the same way as it appears from the statement of the evidence in behalf of the plaintiff. Both of the tractors in question had been in use for about three years, and were almost constantly in need of repair. It was the duty of the plaintiff and the other helper of the foreman to inspect and repair the tractors. The plaintiff, after having

been absent from work for several days on account of the illness of his wife, reported for work at the office of his foreman on the morning that he was injured. The foreman directed the plaintiff and his other helper to go to the house where the machines were kept at night and look over the tractors, tighten them up and see that they were in good running order. Smithson was asked the specific question if he had told the plaintiff to take the tractor anywhere the morning he was injured, and his answer was: "No, there wasn't anything said about taking it. I sent him down to do some work on it." Again, Smithson stated that he told plaintiff and his other helper to go over there, look the tractor over and make repairs on them. The plaintiff was injured while engaged in that service.

The jury returned a verdict in favor of the plaintiff in the sum of $10,000, and from the judgment rendered the defendant has duly prosecuted an appeal to this court.

*King, Mahaffey & Wheeler,* for appellant.

The mere fact that the tractor may have become locked, thereby throwing appellee off, did not prove negligence on the part of appellant. The doctrine of *res ipsa loquitur* does not apply in cases of this nature. 81 Ark. 372; 74 Ark. 19; 79 Ark. 76. Since it was a part of the duty of appellee to keep the tractors in repair, the master did not owe him the duty to see that they were in reasonably safe condition for his use. 3 Labatt, Master & Servant, sec. 1176; 124 S. W. (Ark.) 1048; 44 Ark. 524; 58 Ark. 217; 114 S. W. (Ark.) 697; 187 S. W. 1085; 161 S. W. 421; 166 Ala. 482; 151 N. C. 356; 81 Ga. 14; 31 Calif. 377; 26 Cyc. p. 1252. It was error to refuse defendant's instruction No. 2 in the form requested, since it covered a defense which was supported by the evidence. 87 Ark. 243; 72 Ark. 572; 105 Ark. 205; 122 Ark. 125; 198 S. W. 690. Instruction No. 3½ was error. Appellee being a repairman, appellant was under no obligation to furnish him safe appliances upon which to work. The conditions of the working place were obvious

to appellee, and if there was danger he assumed it in taking employment. 57 Ark. 76; 83 Md. 257; 144 Pa. 348.

*D. D. Glover* and *Percy Steel,* for appellee.

It is a duty the master owes to the servant to furnish him a safe place in which to work. 71 Ark. 55; 91 Ark. 393. It was the duty of the master to warn of the defective condition of the tractor. 81 Ark. 591; 92 Ark. 351; 97 Ark. 553; 87 Ark. 321. A servant does not assume the risk of dangers that arise from the master's negligence, unless he is aware of them. 136 Ark. 607; 102 Ark. 640; 79 Ark. 56; 95 Ark. 294; 101 Ark. 201.

HART, J. (after stating the facts). It is first earnestly insisted by the counsel for the defendant that the evidence is not legally sufficient to support the verdict. The tractor is guided by the front wheel, which is connected with the front part of the machine by a fork, something on the principle of one on a bicycle. The fork comes up through the foot-brake on the machine, and other parts attached to it make a handle-bar with which to guide the machine. The fork is supported on a ball bearing, and the ball bearing is adjusted and held in place with a nut and set-screw through an iron collar. The tractor, in hauling carriages of lumber on the floor of the mill, has a tendency to loosen the set-screw, and this has the effect to tighten the nut on the bearing and make the machine hard to steer and also to lock the steering wheel.

The plaintiff knew that the machine was defective in this respect, and reported that fact to his foreman. Then his wife became ill, and he was absent from his work for several days. When he returned to his work, his foreman told him that the tractor had been repaired, and directed him to drive it from the house, where it was kept at night, to the floor of the mill for use that day. While backing the tractor along the tramway into the mill, the front wheel turned and became locked. The plaintiff tried to turn it back straight so that the machine would not jump off the tramway. His efforts

caused the machine to jump violently and throw him off of it to the left of the tramway, and at the same time the machine ran off to the right of the tramway.   The plaintiff had a right to rely upon the statement of his foreman that the machine had been repaired, and it cannot be said, under the circumstances detailed by him, that the defect in the machine was so patent to him when he got on it that he must have known that it was still out of repair.   According to his testimony, the defect in the set-screw caused the front wheel to lock when it was turned, and this caused the machine to jump and jerk violently and thereby throw the plaintiff from it.   According to his testimony, the defect in the set-screw was the proximate cause of the injury.

It is true that, according to the testimony of the foreman, the plaintiff was sent to repair the tractor instead of driving it into the mill to be used, but this question of fact was settled against it by the verdict of the jury, and it cannot be said that the verdict is not supported by the evidence of the plaintiff.   Therefore, this assignment of error is not well taken.

The next assignment of error is that the judgment should be reversed because the court gave instruction No. 3½, which is as follows:

"You are instructed that it was the duty of the defendant company to exercise ordinary care to furnish the plaintiff a reasonably safe place in which to work, and appliances with which to work, and perform his duties to it with safety to himself while in the exercise of ordinary care for his own protection."

We are of the opinion that the court erred in giving this instruction.   According to the evidence of the plaintiff, he was acting under the immediate command of his foreman, and was injured while driving the tractor into the mill for the defendant to be used, and the injury was caused by a defect in the steering wheel, which the foreman had told him had been repaired.

On the other hand, according to the testimony of the foreman, the plaintiff was sent to inspect and repair

the tractor. The tractor had been in use for about three years, and was constantly in need of repairs. It was a part of the plaintiff's duty to perform this service, and he was injured while doing this. The instruction is erroneous for the reason that it entirely ignores the theory of the defendant. According to the defendant's evidence, it was not its duty to furnish the plaintiff with a reasonably safe place in which and safe appliances with which to work. The foreman had delegated to the plaintiff the duty to inspect the tractor and to repair it. Therefore, the case, under the testimony of the defendant, falls within the principles of law decided in cases of *Southern Anthracite Coal Co.* v. *Bowen*, 93 Ark. 140, and *Stout Lumber Co.* v. *Wray*, 109 Ark. 288, and cases of like character.

Under the evidence for the defendant it was the duty of the plaintiff to inspect the tractor and to repair it, and he was injured while performing this service. Therefore it was error to ignore this testimony and tell the jury that it was the duty of the defendant to exercise ordinary care to furnish the plaintiff with safe appliances with which to work, without taking into consideration the theory of the defendant, as shown by its evidence.

It is true that the general rule that an employer is required to exercise ordinary care, not only to furnish his employees a reasonably safe place in which to work, but reasonably safe appliances to work with, is well settled in this State.

It is equally well settled, however, that this rule has certain well-defined exceptions. One of them is that where a servant knows that the appliance is dangerous and is engaged in the act of putting it in repair he assumes the risk incident to the work of repair. He cannot act upon the assumption that the machinery is in repair when he is employed for the very purpose of putting it in repair. The reason for the rule is aptly stated in the case of the *Dartmouth Spinning Co.* v. *Achard*, 84 Ga.

14, 6 L. R. A. 190.  In that case BLECKLEY, Chief Justice, speaking for the court said:

"While it is the duty of a master to furnish his servant with safe machinery for use, he is under no duty to furnish his machinist with safe machinery to be repaired, or to keep it safe while repairs are in progress. Precisely because it is unsafe for use, repairs are often necessary.  The physician might as well insist on having a well patient to be treated and cured, as the machinist to have sound and safe machinery to be repaired.  The plaintiff was called to this machinery as infirm, not as whole.  An important part of his business was to diagnose the case and discover what was the matter.  If he failed in this branch of his profession, it was either his fault or his misfortune.  So far as appears, no one knew more of the state and condition of the machinery at the time than he did; and the object of calling him in the room was that he might ascertain the cause of the trouble, and apply the remedy."

It follows that the instruction in question is erroneous because it ignored this phase of the case, which was the main defense relied upon by the defendant to defeat the recovery of the plaintiff.

It is next insisted that the court erred in giving instruction No. 4 as modified.  The instruction is as follows:

"The court instructs the jury that the plaintiff, on entering the employment of the defendant, assumed the ordinary risk of dangers arising from the ordinary operation of defendant's business without negligence; and he also assumed the risk of dangers arising from such defects, if any, in the defendant's machinery or appliances that he actually knew about, or would necessarily have discovered in the discharge of his employment.  So, although you should find that defendant's tractor No. 2 was out of repair, and plaintiff was injured as a result of such condition, yet if the plaintiff, before his injury, actually knew of the condition of such tractor,

or, in the proper discharge of the duties of his employment, would necessarily have discovered its condition before his injury, and in time to have avoided injury from such condition, you will find for the defendant, unless you further find from the evidence that plaintiff had been informed by his foreman that tractor No. 2 had been repaired.''

The modification consisted in adding the words at the end of the instruction, ''unless you further find from the evidence that plaintiff had been informed by his foreman that tractor No. 2 had been repaired.''

The fact that his foreman had told him that tractor No. 2 had been repaired would not relieve the plaintiff from the assumption of risk, if, when he went to use the machine, he saw that it had not been repaired, or if the defect was so patent that he could not have helped observing it. In other words, it was error to tell the jury as a matter of law that the defendant would be relieved from the assumption of risk if his foreman had told him that the tractor had been repaired. Of course, the plaintiff, under his theory of the case, would not have had to search for defects or to inspect the machine, but, if the defect in the set-screw was a patent and obvious one, the plaintiff would not be relieved from the assumption of risk merely because his foreman told him that he had repaired the machine.

According to his own testimony, the plaintiff sat on the front part of the machine while operating it. The set-screw connected the fork attached to the front wheel with a handle-bar extending to the left of the machine. The handle-bar was used by the plaintiff to guide the machine, and the defective set-screw was right in front of his eyes. The plaintiff was accustomed to the use of the machine and had helped repair it. Therefore the question of whether or not the defect was patent and obvious to the plaintiff should have been left to the jury, and the court erred in telling the jury as a matter of law that the plaintiff was relieved from the assump-

tion of risk if his foreman had told him that he had repaired the machine.

For the errors indicated the judgment must be reversed and the cause remanded for a new trial.