WISCONSIN & ARKANSAS LUMBER COMPANY v. JACKSON.

Opinion delivered April 7, 1924.

1. MASTER AND SERVANT—NEGLIGENCE—JURY QUESTION.—In an action for personal injuries received by a section-hand in the derailment of a motor-car in which he was riding, evidence of the master's negligence *held* to make a question for the jury.

2. MASTER AND SERVANT—INJURY TO SERVANT—INSTRUCTION.—In a section-hand's action for injuries received in the derailment of a motor-car, where plaintiff was injured while hauling ties, it was not error to refuse defendant's request for instruction that, even though the track was in bad order, it was not negligence to send plaintiff and others to repair it.

3. MASTER AND SERVANT—PERSONAL INJURY—INSTRUCTION.—Where, at the time when plaintiff was injured, he was hauling material for use in repairing tracks at a place other than the point of derailment of the motor car, and was acting under the immediate direction and control of a foreman, there was no error in instructing the jury that it was the duty of defendant to exercise ordinary care in the operation of its motor-car and to see that its track and roadbed were kept in a reasonably safe condition.

4. MASTER AND SERVANT—RULE AS TO SERVANT INJURED WHILE MAKING REPAIRS.—The rule that a servant engaged in making repairs has the duty of providing adequate means of safety and that the master owes him no duty to exercise care in the selection of a reasonably safe place to work had no application where a section-

hand, at the time he was injured, was hauling material for use in repairing a railroad track at a place other than the place of his injury, and he had a right to rely upon the master to see that the track was in reasonably safe condition.

5. MASTER AND SERVANT—ASSUMED RISK.—In a section-hand's action for personal injuries from derailment of a motor-car, alleged to have been caused by a defect in the track, where plaintiff had no control over the operation of the motor-car, and there was an issue as to whether he was sufficiently informed as to the extent of the defects in the track as to appreciate the damage, the issue of assumed risk was for the jury.

6. APPEAL AND ERROR—INVITED ERROR.—Where a witness for defendant, on direct examination, stated that defendant's log road was the best he had ever seen, any error in permitting the witness to be cross-examined concerning train wrecks on the road was invited by the defendant.

7. APPEAL AND ERROR—ADMISSION OF EVIDENCE AS HARMLESS ERROR.— In a section-hand's action for injuries sustained from derailment of a motor-car, where the complaint charged negligence in the structure and condition of the motor-car, plaintiff's testimony that he had never seen a similar motor-car, and had never before ridden on the motor-car, was not prejudicial.

Appeal from Saline Circuit Court; *Thomas E. Toler,* Judge; affirmed.

*E. B. Kinsworthy* and *B. S. Kinsworthy,* for appellant.

The court erred in allowing testimony to be introduced as to other accidents. 58 Ark. 454; 130 Ark. 493; 78 Ark. 55. The court erred in admitting the testimony of the plaintiff as to the use of the motor-car, for the reason that he was not an expert. 108 Ark. 437; 110 Ark. 90; 66 Ark. 494. A servant is presumed to know the ordinary risks. It is his duty to inform himself of them, and, if he negligently fails to do so, he will be held to have assumed them. 77 Ark. 367; 81 Ark. 343; 97 Ark. 486; 100 Ark. 462; 101 Ark. 537; 104 Ark. 489; 106 Ark. 574; 108 Ark. 483; 118 Ark. 304; 147 Ark. 95; 68 Ark. 316.

*D. D. Glover* and *Mehaffy, Donham & Mehaffy,* for appellee.

There was no error in permitting testimony as to other accidents. Thompson on Negligence, § 7849; 83 S. W. 592; 48 Ala. 15.

McCulloch, C. J. Appellant has been engaged in
the business of manufacturing lumber at its plant in Hot
Spring County, and, as an adjunct to the plant, it oper-
ated a railroad for the purpose of hauling logs and lum-
ber to and from its plant and for the purpose of trans-
porting its employees to and from their places of work.
The evidence, so far as developed in the present record,
shows that the railroad was not operated as a public
carrier, but merely for the private use of appellant in
the operation of its manufacturing business.

Appellee was employed as a section-hand, and on
January 15, 1923, while riding on a motor-car hauling
ties to be used in repairing the track, a derailment of
the car occurred, whereby appellee received severe per-
sonal injuries. He instituted this action against appel-
lant to recover damages, alleging negligence on the part
of appellant in failing to maintain the track in proper
condition and in using a motor-car which was not prop-
erly constructed. The complaint contains no allegations
as to negligence with respect to the speed of the car at
the time the wreck occurred, but both sides, without
objection, introduced proof on that issue, and there is a
conflict as to whether there was negligence in operating
the car at too high a rate of speed. It is undisputed that
the car was wrecked, that appellee was thrown therefrom
and seriously injured. On the trial of the cause the jury
returned a verdict in favor of appellee, awarding dam-
ages in the sum of $3,000, the amount claimed in the
complaint. Appellant denied the allegations of negli-
gence, and also pleaded contributory negligence and
assumption of risk.

The evidence is sufficient to establish the fact that
the track was out of repair at the place where the derail-
ment occurred; that the ties were rotten, so that they
would not hold spikes, and that there was a depression
of the ties, called a "low joint," and that this defect
in the track caused the derailment. The evidence shows
that appellant was thrown from the car, that some of the
cross-ties which were being carried on the car were cast

upon appellant's body, and that he received serious injuries.

There is nothing in the testimony which would warrant a finding of contributory negligence on the part of appellee, and the disputed issues of fact involved in the trial of the cause relate to the question of negligence on the part of appellant and assumption of risk on the part of appellee.

The section crew was composed of seven men, who worked in two divisions. At the time of appellee's injury he was working in the division composed of four men—a foreman and two other laborers besides appellee—and they were engaged in hauling and distributing ties to be used in repairing defects in the track. They used a motor-car, which was operated by the foreman as driver or engineer, and six ties were loaded on the car on each trip. All of the men rode on the car, except when they were pushing it along giving it a start. The other part of the crew, composed of three men, was engaged in repairing the track and placing new ties thereon after same were hauled and distributed, and they worked under the direction of the same foreman. At the time the derailment occurred the crew of men putting in ties was working at a point about a mile or three-quarters from the place from which the ties were hauled, and the derailment occurred about midway between the two points. The ties were being hauled to the place where the other part of the crew was at work repairing the track. The derailment occurred at a curve, where the track was shown to be out of repair, and, as before stated, there was a conflict in the testimony as to the speed at which the car was being operated when the derailment occurred.

Appellant requested a peremptory instruction in its favor, and we are of the opinion that the instruction was properly refused, for the reason that there was sufficient evidence to warrant the submission of the issues to the jury.

Counsel for appellant also insist that the court erred in refusing to give the following requested instruction:

"8. The court instructs you that, even if you find that the defendant railroad was in bad order, it was not negligent in sending the plaintiffs and others out to repair the same."

We are of the opinion that this instruction was peremptory in effect, and was properly refused, for appellee, at the time he was injured, was engaged in the general work of making repairs—that is to say, he was connected with the repair crew—and the effect of the instruction would have been a peremptory direction upon the undisputed facts to return a verdict for appellant. Another objection to the instruction is that appellant was not directly engaged in repair work at the time of the injury. While his work was indirectly connected with repair work, it is undisputed that he was hauling ties at the time, and that the repair work was being done by another division of the crew.

It is contended that the court erred in giving the following instruction at the request of appellee:

"4. You are instructed that it was the duty of the defendant company to exercise ordinary care in the operation of its motor-car, and ordinary care to see that its track and roadbed were kept in a reasonably safe condition, and you are further instructed that this duty required the company to make reasonable inspection to see that they were kept in a reasonably safe condition."

As the basis of the objection to this instruction, counsel for appellant invoke the rules of law announced by this court that, while a servant is engaged in the business of wrecking or tearing down a structure or appliance, as in *Grayson-McLeod Lbr. Co.* v. *Carter,* 76 Ark. 69, and *Murch Bros. Const. Co.* v. *Hays,* 88 Ark. 292, or is engaged in the business of making repairs, as in *St. L. I. M. & S. Ry. Co.* v. *Harper,* 44 Ark. 524; *Railway Co.* v. *Torrey,* 58 Ark. 217; *Southern Anthracite Coal Co.* v. *Bowen,* 93 Ark. 140; *Stout Lbr. Co.* v. *Wray,* 109 Ark. 288; and *Arkansas Land & Lbr. Co.* v. *Cooper,* 156 Ark. 58, the duty of providing adequate means of safety devolves on the servant himself and not on the master,

and that the latter owes the former no duty to exercise care in the selection of a reasonably safe place of work. We do not think that the principles of law thus relied on are applicable to the present case, for, according to the testimony adduced, appellant was not engaged in the work of actually making repairs. He was merely hauling material for that purpose, and was acting under the immediate direction and control of his foreman. Nor were the ties being hauled for use at the particular place where the wreck occurred. It is true, as before stated, that appellee was engaged in a general branch of repair work, and he assumed all the dangers ordinarily incident to that service; he knew that there were defects to be repaired and that the track was not in absolutely safe condition, yet he had the right to rely upon the exercise of ordinary care on the part of his employer to see that the track was in a reasonably safe condition for the operation of the work of hauling and distributing ties. In the case of *St. L. I. M. & S. Ry. Co.* v. *Morgart's Admx.*, 45 Ark. 318, which was a suit to recover damages for personal injuries received by the conductor of a gravel train, the court said:

"A railroad track is constantly wearing out, and requires frequent renewals. And it is often necessary for gravel and construction trains to go over and upon unsafe portions of the track to transfer the materials needed for making repairs. The duty of the company, under such circumstances, is to give timely notice of the insecurity, so that the necessary precautions may be adopted to avert danger."

This statement of the master's duty of course implies that ordinary care will be exercised to see that the track is in a reasonably safe condition, so that, with proper notice to the servants operating a train, the danger from existing defects may be obviated. It does not mean that, merely because a servant is engaged in repair work, directly or indirectly, the master can ignore all duty to exercise ordinary care for the protection of the servant. The language of the instruction now

objected to does not violate the principles of law here announced, but, on the contrary, when considered in connection with other instructions given, it is in conformity with those principles. The statement in that instruction with regard to the duty of a master to exercise ordinary care to "see that its track and roadbed were kept in a reasonably safe condition," must be read in the light of undisputed facts in the case, and must be construed as having reference to the use being made of the track at that time in the operation of the motor-car. The instruction lays down no rule with reference to measuring the degree of care, but, on the contrary, properly leaves that to the jury to determine under the particular facts of the case. It was a question for the jury to determine under this instruction, as applied to the facts of the case, whether or not it constituted ordinary care to send out a motor-car over the track in the condition that it was shown to be in at the time.

The court gave the following instructions, among others. at the request of appellant:

"6. The court instructs you that, if you find from the evidence that the railroad upon which the plaintiff was at work, and upon which the motor-car was being operated at the time he was injured, was not a common carrier, but was a private road, built by the defendant for the purpose of hauling logs and lumber over the same, then the court tells you that the defendant would not be required to use any more care in the construction and maintenance of said road than an ordinarily prudent person would do under the circumstances, and, if the road was in such condition and said motor-car was in such condition as an ordinarily prudent person would have kept the same in for the purpose for which it was being used, then the court tells you there was no negligence on behalf of the defendant in this respect.

"7. The court further tells you that, if you find from the evidence that the plaintiff knew the condition of the road and the condition of the motor-car upon which he was at work at the time he is alleged to have been

injured, and appreciated the danger, and was as familiar with all the surrounding conditions and circumstances as the defendant or its foreman was, and knew the dangers that were incident to the work he was doing, and was injured without fault of the defendant, then the court tells you that he assumed the risk of doing this work under the conditions under which it was being done.''

These two instructions were as favorable to appellant as could be asked, and were given in the exact language asked by appellant.

The defense of assumed risk can easily be disposed of as one for the determination of the jury. Appellee was charged with no duty of inspection to discover the defect in the track. He had no control over the operation of the motor-car, and it was a question at issue as to whether or not he was sufficiently informed as to the extent of the defects in the track so as to appreciate the danger.

We are of the opinion that the case was properly submitted to the jury, and that there was sufficient evidence to sustain the verdict.

There are certain other assignments of error with regard to the admission of testimony.

Appellant introduced as a witness its foreman, Mr. Smith, who testified, among other things, that appellant's log-road was the best one he had ever seen. On cross-examination of the witness, appellee was permitted by the court to ask the witness concerning train wrecks on the road. Objection was made, and it is insisted that the admission of this testimony was erroneous and prejudicial in that it tended to prove other acts of negligence in support of the charges of negligence in the present case. The answer to this contention is that appellant invited the error by introducing testimony in chief as to the road being in an extraordinarily good condition at all times, and it cannot complain of the latitude taken in the cross-examination. And, besides, the answer of the witness was a negative one, or at least non-committal as to the facts, and therefore no prejudice could have resulted.

Again, it is insisted that the court erred in allowing the appellee to answer the question as to whether or not he had ever seen a motor-car like this one used for transporting ties. There was a charge of negligence in the complaint with respect to the structure, type and condition of the motor-car, and this question was asked in connection with that feature of the case, as well as in connection with appellee's statement as to his knowledge about the use of a motor-car in hauling these ties. Appellant testified that the trip on which the wreck occurred was the first time he had ever been on a trip when the car was moved under its own power, and that at all other times it had been pushed along the track. We can discover no prejudicial effect that could have resulted from this testimony, and it was introduced in connection with the general narrative of appellee as to the operation of the work which resulted in his injury.

Upon the whole we conclude that there is no error in the record, and that the judgment should be affirmed. It is so ordered.